Chief Justice Robertson
delivered the Opinion of the Court.
The appellants seek the reversal of a judgment in ejectmenf which the appellees obtained against them, for a tract of land, which Arthur Fox, the ancestor of the appellees, bv his will, proved and admitted to record, in May, 1794, directed to be sold for the benefit of his cj1;]¿rer,) an(] which was sold and conveyed, in 1S17, to Andrew Muldrow, the ancestor of the appellants, by Henry Lee and Alexander D. Qrr, the only acting executors of the will of Arthur Fox.
After making sundry specific devises, and after diacting his executors to sell certain tracts of land for raising a fund for the education of his children, the testator, Arthur Fox, made this further devise : — “My *75 mil and desire further is, that all my lands not particularly mentioned shall be sold for the best price that can be, and the money laid out to the best advantage for my children;” and then added — “ also, my desire and will further is, that Henry Lee, Alexander D. Orr and Francis Taylor shall be my whole and sole executors, for carrying this will into full execution, agreeable t.o the real intent and meaning of the same.”
The sale having been long <Je iayed, the heirs and devisees filed a bill for a sale, by the acting ex’ors, and appropriation^ the proceeds— decreed accordingly. .
The heirs themselves undertook to sell the land ; but not succeeding, for six years, requested the executors to do it —who sold it to Muldrow, at a fair price.
The youngest heir then of age.
Instruction,that the deed of the the ex’ors passed no title.
The land which is the subject of controversy in this suit, had not been specifically devised, and was, of course, embraced by the clause of the will, which has been quoted, directing a sale for the benefit of the children.
The executors, either doubting their power to sell, or deeming a sale before the year ISM inexpedient, had made no'salc of the land when, in May, 1811, the heirs and devisees of Arthur Fox filed a bill in chancery, praying for a decree directing a sale and an appropriation of the proceeds; and, in August, 1811, a decree was accordingly rendered, on bill and answer, directing the acting executors to make sale of the land now in controversy, and appropriate the proceeds to the extinguishment of a balance due the executor, Lee, for advances of his own funds, and the residue, if any, to be distributed among the devisees.
It appears from the deposition of Henry Lee, which was read on the trial- in the circuit court, that the devisees, after obtaining the decree, agreed that they would sell the land ; but that, having been unable, for several years, to make an advantageous sale, they requested the executors to negotiate a sale, and that, accordingly, shortly afterwards, in 1817, they, the executors, sold the land to Andrew Muldrow, for the price at which gentlemen of intelligence had valued it, and which was the highest price that could be obtained.
The youngest child of the testator became twenty one years old in March, 1813.
Upon the foregoing,facts, in substance, the circuit court instructed the jury, that the deed from Lee and Orr to Andrew Muldrow, passed no title, and that the legal right still remained in the heirs of Arthur Fox, deceased.
Grounds upon which the validity of the sale is contested.
Land devised to be sold, may be sold by the acting,executors, where' no one is appointed by the will to malte the sale, or the nominee refuses to act, or dies before the sale. Statute of'97, §44.
Reasonsfor con storing this will as conferring up on the executors power to make the sale.
*76 That instruction presents the only question of any importance or difficulty,
If the acting executors had power to sell, and pursued that power substantially and in good faith,- the instruction cannot be sustained. But the appellees insist, that no power to sell was ever conferred on Lee and Orr, either by the will or by the decree ; and that, if competent authority to sell had ever been given, lapse of time destroyed it ; or that, in any event, the purchaser was bound to see to the application of the sale money ; that it had not been legally appropriated, and therefore the deed conferred no title.
The forty fourth section of an act of 1797, 1 Digest, 531, provides that, “ the sale and conveyance of land devised to be sold, shall be made by the executors, or such'of them as shall undertake the execution of the will, if no other person be thereby appointed for that purpose, or if the person ?o appointed shall refuse to perform the trust, or die before he shall have completed it”.
If the will in this case should be understood as making no appointment of any person or persons to sell the land devised to be sold and now in controversy, the foregoing statutory enactment conferred plenary and unquestionable power on the acting executors who did sell and convey it to the ancestor of the appellants. But the counsel for the appellees has argued, that this statute does not apply to this case, because, as he insists, the power was not peremptory, but was discretionary merely, and be relies on the case of Wooldridge’s Heirs vs. Watkins’ Executors et als., 3 Bibb, 349, as an authority in point. The doctrine recognised and applied in that case, does not apply to this case, because here the sale of the land was not left to defend on the option or judgment of the executors, hut was directed positively and unconditionally. But the argument of the counsel, in assimilating this case to that decided in third Bibb, assumes, by a necessary implication, that the will of Arthur Fox gave to his executors power to sell the latid ; and in this we are disposed to concur with the counsel,for the following reasons : first, the executors were expressly directed to sell land for the education of the *77 children ; and immediately afterwards, the testator directed that other land be also sold, and the proceeds laid out to the best advantage for the children ; wherefore, the inference is almost inevitable, that the testator intended that his executors should act in the latter case as well as in ¡the former; second, it is probable, and even almost certain, that the testator, intended that the avails of the sale should be distributed or appropriated by his executors, and therefore the rational inference is, that he also intended that they should make the sale and conveyance, Davone vs. Fanning, 2 Johnson’s Chancery Reports, 254. Third, in -nominating his execut'ors, the testator declared that they should have full power to carry into effect all the provisions of his will; which should be deemed in effect a declaration that they should have power to sell the land now in controversy, and the sale of which was directed by the will. -
The act of ’97 comprehends oa ses, like this, where ex’rs are directed to sell,, and some of them do not accept the trust; and authorizes the salelry those who act.
If, then, the forty fourth section of the act of 1797 (supra,) does not- apply to this case, its inapplicability must be the consequence only of giving such, an interpretation to that provision as to restrict its application to cases in which either’ no person is empowered to sell, or the persons appointed to sell are not the executors.
It may be admitted that (in the absence of any opposing authority,) this might be a plausible construction ; first, because the letter of the enactment may not authorize a more comprehensive application ; second, because the literal interpretation might supply the defects in the preexisting law, which were within the presumed purpose of the legislature ; for it had been provided by the statute of 21 Hen. VIII. c. 4, that such of the execut.ors as accepted the trust might execute the power when the will authorized the executors ,to sell. Should it be said, that this enactment was intended only for cases in which a naked power is given to executors nominatim, it might be answered, that a concession that such a restricted interpretation is thé true one, would not materially affect the point we are considering ; because, according to. the common law, as expounded by Coke, a power, (whether naked or united *78 with an interest, or an express consequential trust) when given to executors in their collective and fiducial character as trustees, would survive and might be executed, as we understand the authorities, by such of the executors as accepted the trust.
A power given to a plurality of persons cannot be exercised by apart of them; and this rule,the common law, before the 21 of H. VIII., applied to ex’ors, when, to them, ty theirt proper names, a mere power was' given, for then it was supposed to be given to them as individuals, nnd not as executors.— But—
It seems, however, from an intimation in Wooldridge vs. Watkins, (supra,) that the court was inclined, in that case, to consider the forty fourth section of the statute of 1797, as comprehending a-case in which executors are directed to sell, but a part of them refused to accept the trust ; and a similar opinion was given in Coleman vs. McKinney, 3 J. J. Marshall, 246. We are not disposed to overturn the construction thus judicially recognised. If this be the true exposition, the statute applies to this case. But even should that construction be not sustainable, we are of the opinion that, independently-of the act of 1797, the- acting executors, Lee and Orr, had legal power to sell and convey.
It is undisputably the settled doctrine of the common law, that a naked power given to a plurality of persons (not executors) cannot survive or be executed by a less number than the whole of those whom the grantor has required to execute it; and no other doctrine would be just or consistent ; for if A authorize B, C and D to act for'him, and do not say that any one, or a majority, may execute the power, the act of A, or of A and B, would be unauthorized, and should, therefore be void. The common law, as understood by Coke, Co. Lit. 112, b. — 113, a. — 181, b., and by Doddridge, Shep. Touch. 429, and by Powell, Tow. on Dev. 292-310, applied the same rule to a mere power given, to executors by name. These authorities should be deemed satisfactory — although we find Hargrave contra, Co. Lit. 113, a. noté; for they have not only been recognised by this court, but seem to be fortified by parliamentary concurrence, inferrible from the preamble to the statute of 21 Hen. VIII. reciting that a power given to executors by name, could not be legally executed by less than “the whole number of the executors named to and for the same.” However, the rule, as thus applied by the common law, and *79 until the 21st Hen. VIII., can be sustained only by considering a naked power to executors nominalim, as given to the individuals named, not as executors, or because they are executors, and by deeming the official adjunct, when it is used, as mere descriptio personarum: and this, the argument of Hargrave' and a proper analysis will, we think, make sufficiently manifest.
Where the pow er is conferred upon executor?, merely as such; or where it is coupled with an interest,or with an express trust consequent upon the primary power, (though given to the executors nominaiim,) it is to be understood as conferred upon them in their fiduciary character, collectively; and it survives as long as more than one remains ; — but not to a single one.
Refusal of an ex’or to undertake a trust, may bepresumed from lapse of time and other' facts.
It is equally well settled, that a naked power given to executors, not by their individual names, but by their aggregate fiducial name — as “ to 'my executors” — will survive, as long as a plural number shall remain — Co. Lit. 112, b.; Sugden on Powers, 159; 4 Kent’s Com. 326; and some of the same and other authorities shew that a power coupled with an interest, or with an express trust consequential to the primary power, when conferred on executors either nominalim, or qua executors, will survive. 3 Atk. 174; 2 Pr. Wms. 102; Osgood vs. Franklin, 2 Johnson’s Chy. Reps. 20-21. It seems to be a logical and legal deduction that, in both classes of cases last described, such of the executors as shall have accepted the trust and survive, may execute the power lawfully and effectually ; for if the statute of Hen. VIII. apply only to the execution of naked powers given to executors, the reason of the common law applies with equal efficacy to the execution of powers by the executors who accept, in cases in which a mere power is given to “ the executors as fiduciaries, and in which, power (given in either mode) is coupled with an interest or an express consequential trust; and thus, too, we understand the authorities.— When a testator confers a special power on his executors, as executors, he should be understood to mean (nothing appearing to the contrary,) those who should undertake and should act as the executors of his will.
Now, in this case, the power to sell is not only given to the executors in their collective character and name as such, but it is connected with a consequential and express trust: to wit, the distribution of the proceeds of sale. Wherefore, whether the act of 1797 shall apply or not, the acting executors, Lee and Orr, once had power to sell and convey the tract of land which is the sub *80 ject of this suit; for, if Taylor died, the power surviVed, and if he did not die, his refusal to undertake the execution of the trust, should be presumed from the lapse of time and other facts.
Where there is a naked power tórstoselUand" it does not, at Burvive to one: —aiiter, when the power is coupled with an interest. Where the discretion of whethe™thero shall be a sale ’’97 does not apply. 3 Pibb, 349.
There is nothing judicially settled in the case in Bibb (supra,) inconsistent with any preliminary doctrine 6f this opinion, or with the foregoing conclusion. In that case, the court decided — first, that, (at common law,) a naked power given to executors, does not survive to one executor : second, that when the execution or n0nexecution, of a naked power is confided to the judgment and election oí the nominees, the lorty fourth section of the act of 1797 does not apply, because, in the opinion of the court, that section embraces the case only *n a sal° is directed, or, in other words, an estate is 11 devised to be sold” without reservation or contingenCY- ■ If there is any thing in that opinion inconsistent wjth this, it must be found in some deduction from the possible applications of the doctrine settled on the first point. But how far any such inconsistent deductions might be warranted, cannot be ascertained from any thing appearing. It does not appear whether, in that case, the power was given to the executors nominalim, or as executors, eo nominenor does it appear, that the court considered or noticed the statute of 21 Hen. VIII. But, if that statute was considered, either the power in that case, was given to the executors raiione officii, and not by their individual names, and the court must have been of the opinion that the statute did not apply to such a power, but should be restricted to a naked power given to executors by name, or to cases of refusal by some to accept the trust, or the court deemed that statute inapplicable to a contingent power, and therefore decided that, as (in their opinion,) the statute of 21 Hen. VIII. did not apply, and as the power was given to the executors in their fiducial characters, unconnected with interest or consequential trust, it did not survive to one executor. If such be the proper interpretation of the statute, (and in some respects, if not altogether, it doubtless is,) and if the power was given to the executors eo nomine, then, as it was a naked power with *81 out interest or incidental and collateral trust, it did not survive to one executor; according to any doctrine or authority recognised in this opinion. But if the court, in that case, had intended to lay down the broad and unqualified proposition, that a power given to executors ■would, in no case, survive, nor could, under any circumstances,| lie executed by those who accept, when any refuse, we could not regard that opinion, in either particular, as authoritative. The opinion, however, does not allude to the power of executors who act when co-nominees refuse to accept; and not only does it not intimate that power to executors will, in no case, survive,'but it contains a clear implication that power connected with interest will survive ; and doubtless other qualifications would have been recognised had any such precision of discrimination been deemed necessary, in a judicial opinion on the facts presented in that case.
If there is a positive direction in a will that land . shall he sold, its being coupled with a direction that the ex ors shall “lay out the proceeds to the best advantage for the children,” does not change it, or ren der í/i e sale discretionary with the executors : though part of •them who accept the trust may make the sale, while the concurrence of all might be required to distribute the proceeds.
We are to bé understood as not intending to decide whether Lee and Orr could have executed the power to sell, had the sale, instead of being directed peremptorily, been left to the judgment or option of the executors. An opinion on that point would now be extra-judicial; and therefore, we forbear to malee any intimation one way or the other. The counsel for the appellees has, however, insisted that the direction to “layout” the proceeds of sale “ to the best advantage for the children,” implies that the mode of appropriation was confided to the judgment of the executors; and hence he has argued that the power to sell should receive a similar interpretation: sed non sequitur. The power to sell is one thing; the appropriation of the proceeds of the sale is another thing ; and even when, as in this case, the same persons are the depositories of both powers, the fact that the distribution is optional, would not shew that the sale is also discretionary. In this case there was no option as to the sale — the power is unconditional — the direction to sell peremptory. Nor is it admitted, that the executors had any power left to them to judge whether the proceeds of sale should be distributed, or among whom, or in what proportions. The will *82 directed, that the money should go to the children, and in equal portions of course. The only discretion which was confided was as to the mode and time of distribution ; and it may well be doubted whether such a discretion differed essentially from that necessarily confided as to the time and mode of the sale .itself. Nor does the character or the execution of the power depend on the nature of the power to distribute, or the right to execute it. Two executors might be competent for the execution of the former, even though they might be incompetent for the execution of the latter. And, had such a course been necessary, the chancellor might, after the sale by the two acting executors, have supplied any accidental deficit in their legal power to make distribution ; and this, if it was necessary, was done.
The style Sf teaorofthewhole' attended to, in deciding upon theexectóorsun der a particular ClflUSC
The chancellor •cannot enforce the execution of BaTiftlie°power is connected ifitbefAe ttefy of the depositothe chancellor may enforce its execution‘or he may supply a defective execution.-A decree made, in such a case, with all necessary parties before the court, can bo impeached only by a regular proceeding — not incidentally, in a trial at law — there it must have its due influence.
In addition to the foregoing considerations, the style and tenor of the whole will should not pass unnoticed, They tend to shew that it was the intention of the testator that those who should act as his executors should have power to do every thing enjoined or directed by the will; that is, that ¿/ie executors who should undertake the execution of his will, ** ^ should execute the ichole will. This, of itself, should be satisfactory and conclusive.
But, should there still be doubt as to the power of the two acting executors to sell and convey the land, the decree, to which reference has already been made, should remove all difficulty, so far as the power of two alone, instead of all three of the nominees, is liable to be questioned.
Although a chancellor cannot enforce the execution 0f a mere power, 2 Pr. Wms. 227, nevertheless, there can b he no doubt that he may, on the application of a beneflcia¡ PartV’ enfor,:e tlie execution, or supply the defective execution, of a power connected with a trust, or ^'s ^ie d’ity of tlie depository to execute. 4 Kent’s Commentaries, 344; 2 Roper on Legacies, 300. Whenever the power tails in consequence of the death or accidental incapacity of its appointed depository, or whenever it is in danger of being frustrated or injuriously *83 exercised, the chancellor may interpose, and iti a proper case, between the proper parties, his decree will be effectual. Such appears to have been the object of the bill, and such the effect of the decree we are now considering. All proper parties were before the court; the proceedings and decree appear, prima facie, t'o have been fair and regular; and therefore, even if there should bo any ground for impeaching the decree in a direct proceeding for that purpose in equity, a court of common law should not incidentally disregard it, or question its effect, so far as, being deemed valid, it is entitled to auy influence; and we have already suggested that, to the full extent of the objection that two only of the nominated executors could not sell and convey, the decree should be conclusive.
Exefcutors being directed to sell land of the testator — the will being silent as to .the time witlr in which tbo sale is to bo made, the power is not lost by-mere lapse of time, (17 years in this case.)— But the heirs- or devisees may object and prevent the salo, after an unreasonable delay.
If a decree is made requiring ex’ors to sell land, as directed by the will, the omission, to comply for a long time, (six years,) doesnot invalidate the power. But the testator’s intentions must be observed,"and if he has limited a time, and that has passed, the power is gone— the chancellor cannot revive if;
II. The time which had elapsed from the death of the testator to the filing of the bill for enforcing the sale, (seventeen years,) cannot, per se, have operated as an ex-tinguishment of the power to sell ; nor could it have operated as an inflexible bar to the execution of the power. It might have enabled the devisees to resist- and prevent the execution of the power, and to have taken possession of the land and disposed of it, as they might have deemed proper, had they been opposed to the sale under the will, and had they, instead of soliciting a sale, deemed it their interest to oppose it. Osgood vs. Franklin (supra,) is a very strong case [stronger than this,) as to the lapse of time.
Nor can the lapse of time from the decree to the sale, (about six years,) without any other circumstance, imparting to it a peculiar efficacy, invalidate the conveyance. The decree prescribed no limitation to the time of selling ; and were any explanation of the delay necessary, Lee’s deposition furnishés all that reason could require.
But, as the intention of the testator must govern the' construction and'execution of the power, the lapse of time would, even yet, have great and conclusive effect if a right interpretation of the will should shew, that the. testator intended that the sale should have been made at an earlier period than-1811 — when the bill was- *84 filed, ami that he intended that the power should expire before that time. For, if it can he shewn that the power had expired, (as the'chancellor’s decree could not have resuscitated it,) the sale was without the testator’s authority, and could derive no aid from the will.
If a testator deyised land to be sold, to educate his children, it may be thence inferred, thattoe intended the sale should t)e made during Shpir minority.
But we are unable to ascertain from the will, that the power had expired by limitation. The will prescribed no definite or express limitation, and a constructive limitation would be hazardous, and altogether rash and arbitrary. The counsel for the appellees has argued, that it was evidently the testator’s intention that the land should be sold during the minority of his children. Perhaps that may have been his intention ; but, if it were, it cannot be deduced from any thing in the will with a precision truly judicial, or a certainty in any degree satisfactory.
We might' infer that the testator intended the sale, during the minority of his children, and all his children, of the lands which he devised for their education ; because the object of the sale could not have been reasonably effectuated at a more remote period. But the land, which Andrew Muldrow bought, was destined by the testator, to a different purpose, and one altogether general and indefinite. It would be but reasonable to presume that the testator, having made a specific appropriation of as much of his estate as was necessary for the maintenance and education- of his children, and of as much as was conveniently distributable, concluded that the comparatively unimportant residue of his land should be sold for the purpose of distribution equally among his children. But when it was to be sold, was left to the discretion of his' executors. The only restriction as to time, is that implied in every general grant of a similar power, to wit, that the sale should be in convenient time.
The proceeds were to have been laid out for the benefit of his children — but when or how ? While they were all minors ? This court cannot so decide. Before they all attained majority ? We Cannot say so. If by appropriating this land to the payment of debts, other estate, deemed more valuable, could have been sav *85 ed, and the executors had considered such a disposition most advantageous to the children, they might rightfully have applied the land to that purpose, if the executors, believing that an immediate sale would have been disadvantageous, had applied their own funds to the payment of debts, and had done nothing more until all the children had become twenty one 'years old, and then, believing that an advantageous sale could be made, had sold for a price greatly exceeding the principal and legal interest which an earlier sale could have produced1 — would this court have betp bc-Vcl to decide —could it have decided — that the pu^-er had expired, and that the sale therefore was void? Such would have been this case (as we may infer) had there been no decree at the instance of the devisees themselves.
No sPe“fic aP~ propnation of - the proceeds of land devised to be. sold, being made, the purchaser is not bound to see to the application of the purchase money. And even where there is such an appropriation, and the purchaser fails to attend to it, the conveyance is, nevertheless, valid at law: the remedy is in ohancery.
The trust, in this case, like other general trusts, was altogether unlimited in duration, except so far as all such trusts are circumscribed within the bounds of reason and convenience; and, therefore, it was never extinct as long as all the parties concerned, to wit, the executors and devisees, chose to keep it aliye. But, as before suggested, if there had been unreasonable negligence or delinquency( and the devisees had therefore deemed it their interest to prevent the sale of the land, they might have done so. That was their appropriate and only mode of separating the power from the land] and of holding the latter instead of its vendible value.
It is not, therefore, necessary to decide whether, if the power had been extinct before the bill in chancery was filed, or the decree rendered, the appellees would be estopped by that decree. Nor does it become necessary to determine what effect, if any, the settlement in the county court shall have.
III. As no specific- appropriation of the proceeds of 1 ri r i the sale was directed by the will, the purchaser of the land was not bound to see to their application. But, had it been otherwise, the legal effect of the conveyance would not have been changed or impaired ill a *86 court of law. The redress'would have been in equity, And, moreover, the record, as it now appears, would not allow this court to decide, that the money for which the land was sold, was not legally and honestly applied accor¿:ng to the decree, and consistently with the objects and wishes of the testator.
Wherefore, it is considered by this court, that the judgment of the circuit court be reversed, and the cause remanded for a new trial.