Judge Ewing
delivered the Opinion of the Court.
By an order of the Circuit Court, these cases were consolidated, and tried together.
Benajah Rice, deceased, having made his will appointing three persons as executors, of whom Michael Clore was one, and who alone qualified and took on himself the execution of the same — he, by his will, authorized and directed his executors, absolutely and unconditionally, to sell all his real and personal estate (with the exception of certain specific bequests,) and after the payment of his debts, to divide the proceeds, among certain of his children, of whom Joanna Saunders was one. *190 George Ross, before the sale, married Joanna Saunders. Said Clore sold at public auction a tract of land of one hundred acres; and said George Ross, being the highest bidder, became the purchaser, at six hundred and eighty-five dollars, payable in twelve months; the same being the tract of land on which said Joanna’s father had resided. This sale took place 6th March, 1820.
Bill of G. §- A. Roas vs. Clore, ex’r. Ifc.
In July, 1822, Joanna Ross filed her bill against her husband, for a divorce and alimony, setting forth and charging cruel and barbarous treatment of her husband, as the grounds of her application; and, among other estate, specifies the portion of her father’s estate yet in the hands of the executor, and prays that it may be decreed to her.
The Court granted the divorce; re-invested her with the four-fifths part of her portion in her father’s estate, in the hands of the executor; directed the executor to retain the one-fifth for the benefit of her child by Ross, and perpetually enjoined Ross, her husband, from collecting said portion from the executor, or setting off the same against the debt due the executor for the land sold. This decree was rendered prior to August, 1826. At the August term, 1826, Clore, the executor, obtained judgment upon the note for the land, against Ross and his security. Execution issued, and was levied on the estate of Alexander Ross, the surety, and twenty-five dollars made, and the execution returned no property found, as to the balance.
George and Alexander Ross file their bill, praying an injunction against said judgment, and that the contract for the land may be rescinded, and the note surrendered.
The allegations of the bill are, that the purchase was induced by the persuasions of said Joanna, and upon the expectation — superinduced by the executor, that the note might be set off by the portion of said Joanna of her father’s estate in the hands of the executor; and that Alexander Ross was induced to become the surety, by the representations of the executor, before and at the time he signed the same; that the taking of security was mere form, and he would incur no risk by becoming bound; that he would settle with George Ross, and *191 retain the amount out of said Joanna’s portion. It is further alleged, that the executor was unable to make a title to the land; and the bond for the title is exhibited, which requires the title to be made when the consideration is paid.
Answer.
Bill of Clore, the executor, against G. and A. Ross.
Answer Sr cross bill.
Decrees of the Circuit Court.
Failure of proof in support of Ross’ bill.
The executor denies the allegations of the bill; says, that it was his expectation that the note would have been adjusted and settled out of Joanna’s portion, in part or in whole, and such would have been the case, had not the decree for a divorce and alimony been rendered; and relies on the decree.
In the second case, Clore, the executor, filed his bill against Alexander and George Ross, setting forth the said execution and return of no property found, and, under' the statute, praying that said land may be subjected to the payment of said judgment, interest and costs.
Alexander and George Ross, in their answer, rely upon the same equity set up in their aforesaid bill, make it a cross bill, and pray a rescission of the contract, and a surrender of the note.
The Circuit Court dismissed the bill filed by the Rosses, and decreed the land to be sold in satisfaction of the execution, or so much as would be sufficient. From these two decrees, the cases have been brought to this Court by writ of error.
There is no satisfactory evidence that George Ross was encouraged or induced to become the purchaser of said land by the persuasions or solicitations of the executor. There was an expectation, no douut, indulged in, by himself and his wife, that the debt could be liquidated, in part or in whole, by the portion of his wife, which would, in all reasonable probability, be in the hands of the executor before the note would be exacted. But there is no satisfactory evidence-that the executor encouraged these expectations before the sale, or made any promise to, or agreement with him, before or at the purchase, that such arrangement would be made. And, waiving the question, whether parol proof is competent to establish an arrangement out of the written terms of the note, either in relation to the principal or surety— *192 If any arrangement took place or representation was made by the executor, it was fairly and honestly made? under the honest conviction, entertained by himself at the time, that, the debt might and would be liquidated, in part or whole, by the portion of said Joanna. He could not have known or anticipated that George Ross, whose duty it was to protect, nourish and cherish his wife, would become her merciless oppressor, and drive her to the alternative of seeking redress in a Court of Chancery. Nor could he have anticipated or known at that time that the fund which he was then willing should be set off against the note, would, by a Chancellor, be withdrawn from his control, and vested in the hands of another. Without a knowledge of these facts, he could not have been guilty of fraud in the representations which he is charged with having made.
A testator directs a sale o'f all his estate, and distribution of the proceeds. The husband of a distributee purchases some of the land,in the expectation, countenanced by the executor, that his note for the purchase money, and his wife’s share of the proceeds of her father’s estate,would be set off against each other. She afterwards obtains a divorce because of bad treatment from him, 8/- her share of her father’s estate is decreed to her, for alimony, and her husband is enjoined from collecting it. He thenfiles a bill for an injunction against the collection of his note for the land, and for a rescission of the contract:— but held, that, under such circumstances, he is entitled to no relief.— The executor, in such case, having acted in good faith, the surety in the note must abide the fate of his principal:— chancery cannot relieve him.
If the portion of Joanna has not been applied to the settlement of said note, it has been caused by the misconduct of the said George, and not by the act of the executor. If a promise has been violated on his part, the bad conduct of- the said George has produced that state of things which has put it out of the power of the executor to comply with it, as well as out of his own power to receive a compliance with it, without violating the perpetual injunction of the Court.
It is true, said executor was not a party to the suit for a divorce. But said George was. And in that suit, the very fund, which he now complains was not applied to the satisfaction of his note, was then a subject of litigation ; and the decree, if not obligatory, as such, upon the executor, is valid against him; and we cannot conceive how the executor can apply said debt to the liquidation of his debt, unless he has the power to receive it as such. The decree gives another direction to the fund, and places it out of his power, without a violation of the injunction of the Court upon him, to receive it in that way.
Besides, the executor, though not a party, had notice of the pendency of said suit, as well as notice of the decree giving another direction to the funds in his hands. He 'surely is chargeable with no iniquity or impropriety, *193 during the pendency of the suit, in failing to pay over or apply the fund which was in litigation in his hands, when upon a proper application, the Court would have enjoined him from paying or applying it, or the said Ross from receiving it. He has done that which a Court of Chancery would have done, to secure the rights of the complainant in said suit. Much less can he be chargeable with any impropriety, after the decree is rendered and he has notice of it, in refusing to apply the fund, or pay it over to any other than the individual to whom the Court has decreed it.
Any arrangement between debtor and crealtor> wb\cb creas 6s the nslc of the surety, wltbout bls assent, will exonerate him; but wiTl°resultUoníy from some act nothftom*mere passiveness on any^act^^the principal debtor, There aremoá in which a surety j^demnity'without waiting the ft^emdbor — as ¿ybtpayi^§ lbe Up0n’ the pmicS b|J* flwia tim
We are therefore clear, that George Ross has no just ground to relief. He comes into chancery with unclean hands, and this Court cannot afford him redress.
In relation to Alexander Ross, the surety, we have had Trr tt- • i i -i • more difficulty. His caséis a hard one; and sureties are peculiarly the favorites of a Court of Chancery; j. v j / and we have labored to find some principle consistent with the established rules of this court and the funda- .... . .. , „ „ mental principles oí equity, to relieve him. But we have labored in vain. He must abide the fate of his principal. He cannot, on the score of fraud, be released, for the same reasons that have been applied to his principal. It is pretty elearly established, that he was induced to enter into the note as surety, under the expectation, at least in part created by the executor, that the portion m his hands, coming to said J oanna, might be applied, so far as it would go, to the payment of said note, and that he would have in his hands enough, or nearly enough, to pay it; and that the execution of the note was a matter of form. This opinion was honestly entertained by the executor at the time, as well as by the Rosses. The question arises, whether these facts may be relied on, in connection with the circumstances that afterwards occurred, to release the security from his responsibility.
It is abundantly settled, that any change of the contract, after its execution, or postponement of the day of payment to a different period, by the creditor and principal, without the assent of the surety, or the release o~ surrender of a lien by the creditor, of which the surety *194 may avail himself, by'which his risk and responsibility may be increased, will release the surety. 1 Maddock's Chy. 233—4—5. But to effect the release in any of these cases, requires not only the assent, but the active agency, of the creditor; it will not be effected by the •creditor’s remaining inactive or passive. The creditor is not made to lose his debt, or his claim upon the surety for its payment, by his passiveness or inactivity in using the means to coerce it; but can be made to lose it only by his direct agency in the means adopted whereby the risk of the surety is increased. 5 Monroe, 252; 7 Monroe, 399; 3 Call, 72; 2 Brown's Chy. Cases, 582; 1 Mad. Chy. 233—4—5; 4 Monroe, 491; 3 J.J. Marsh. 527, 528.
The law has furnished the surety with the means to indemnify himself: first, by paying the debt, and going upon his principal; secondly, by filing his bill of quia timet, and hastening his principal to pay the debt, or subjecting the lien, if any, to its satisfaction; and unless he is curtailed in these privileges, by the act of the creditor, by an arrangement with the principal, by which time is given, or the lien released, he has no just ground to complain. The act of the principal without the concurrence or participation of the creditor, will not do. Such a rule might work manifest injustice to the creditor. Nor will the active agency of a third party, by which this increased responsibility may accrue to the surety, avail. .Such a rule would be equally unjust to the creditor.
If the above rules be applied to the present case, it will be seen, that the surety is not released. The creditor has not given time, or released any lien, or made any arrangement with the principal, whereby the risk of the surety has been increased. He has remained passive, or at least has been no further concerned than to assist in taking a deposition at the instance of the attorney for the plaintiff, after the suit was commenced and in progress for a divorce. He did not canse the misconduct of the principal, which is the foundation of the whole difficulty into which the surety has been involved. That misconduct gave' the Chancellor equitable ground to seize upon the fund and apply it to the use of an innocent sufferer, whose portion and patrimony it was. By this proceed *195 ing the surety has, it is true, been deprived of a fund which might and would have been applied towards paying his note, but he has been deprived of it by the act and misconduct of his principal, and not by the act of the creditor. His fate therefore must follow the fate of the principal. 7 Monroe, 397, Brown &c. vs. Wright.
When an absolute powerto sell land is conferred upon executors,, by the will, the one who qualifies may make the sale.
An office copy of a deed not recorded in due time,, is no proof of its due execution.
Though' neither theoriginaVdeed, g-om aiegafwí ^^vnof duced and proved — the execution of the original, its use in former suits, hJpS ^and^tjJirty years possession under it, also proved — the title is deemed unquestionable_„„ _ dee seeking a rescission, must take. suotl a* a V
But an objection is raised in the Rosses’ bill, as well as cross bill, to the validity of the executor’s title; and upon that ground, the contract is sought to be rescinded..
The power conferred by Rice’s will on his executors, to sell, is not only conferred upon them in their fiduciary character as executors, and is coupled with an interest, but an absolute power to sell is conferred without discretion; and as such, there can be no doubt that the executor who qualified may sell. 2 Dana, 75, Muldrow's Heirs vs. Fox's Heirs &c.
The deed from Morgan and Fishback and their wives, to H. Marshall, for thirty five thousand five hundred and seventy acres, embracing the land in contest, and under which said testator Rice derived his title to said land, is certainly not properly authenticated and recorded. It bears date the 19th day of August, 1800. It was acknowledged before two justices of the peace in the county of Fayette, by Fishback and wife, on the same day, and there recorded and certified to the proper court, October 13th, 1800; and was admitted to record in the Court of Appeals, upon those certificates and the acknowledgement of Morgan, on the 23d October, 1801. And a copy of the deed from the Court of Appeals, is exhibited in testimony. The time for recording in the clerk’s office of this Court, having expired before the deed was admitted to record, the certificate of "the clerk of this Court, attached to the office copy, is no evidence of the due execution of the deed.
But to obviate this difficulty, the evidence of H. Marshall and J. J. Marshall have been taken, by whom the execution of the deed is proven, and that, the original being lost, the copy produced is a true copy of it. And *196 further, it is proved, that H. Marshall took possession of said connection, has used the deed in the prosecution of several suits, and his right to the land had been unquestioned for upwards of thirty years. And that Rice and those under whom he claimed, at the trial of the cause in the Circuit Court, had been in the continual, peaceable and uninterrupted possession of the hundred acres sold, claiming under Marshall’s title, for about thirty years.
SJ©'claim of'dower being asserted 35 years after the date of a deed, the presumption is that none exists.
The age of the deed to Marshall and the length of possession without adverse claim, it seems to this court, will furnish ample security to the title which the executor is able to make to Ross.
The object of recording deeds is two-fold: First — to guard against frauds by the vendor upon subsequent purchasers; and secondly, to furnish vendees with an easy means to trace their titles to their sources.
Ross can apprehend no danger of subsequent purchasers overreaching the prior purchase of his vendor, by reason of Marshall’s deed not having been admitted to record in due time, provided he retains the possession. His possession would be notice to subsequent purchasers y and a sale while he remained in possession, would be void under our statute of champerty. Besides, if he left the possession, he could regain it, without other title than the possession of those under whom he claims, for more than twenty years.i
In relation to the second ground — the age of the deed to Marshall, and the length of possession under it, will always prove it, by the presumption of law, in favor of its execution.
The dowers of the wives of Morgan and Fishback, it is true, have not been regularly relinquished. But the lapse of time that has intervened from the execution of the deed to Marshall — about thirty five years, in the absence of all proof on the subject, raises a presumption that they are not living. And, if living, their dower might be laid off in the balance of the connection, without interfering with the hundred acres.
We are therefore satisfied that no available impediments exist against the validity of the title.
The decree upon an original bill having disposed of the subject matter of the cross bill, and defeated its object, the omission of a formal decree dismissing the cross bill» is not material.
But it is objected in the case of Clore vs. Rosses, that the Circuit Court has not disposed of the cross bill. Though it would have been more formal for the Court to have dismissed it, we regard the decree which was entered upon the whole case, directing the land to be sold, as virtually disposing of the cross bill. At least, the defendants have no just grounds of complaint because their bill was not dismissed; and they could not have expected a decree in their favor on it, rescinding the contract. Such decree would have been directly repugnant to the decree which was rendered, directing a sale of the land.
But we discover that though the Court, in this case,in rendering their interlocutory decree, have allowed the credit of twenty five dollars made on the execution, yet in the, final decree, they have directed the land to be sold in satisfaction of the whole debt, interest and costs, without regard to said credit. For this error, this cause must be reversed.
It is therefore ordered and decreed, that the decree in the case of Alexander- and George Ross vs. Clore, executor, be affirmed with costs; and that the decree in the case of Clore vs. Rosses, be reversed, and remanded that the credit of twenty five dollars made on the execution, be allowed, and a decree rendered for the sale of the land for the balance of said debt, and interest and cost at law, as well as in chancery, or so much thereof as. will be sufficient to pay the same; and that said executor pay to said Rosses, their costs in this case expended, to-be paid out of the assets in his hands to be administered.