May Term,
1834.

REED
v.
CARTER.

---

### REED and Others *v.* CARTER.

A sheriff, by virtue of an execution on which about 20 dollars were due, sold 100 acres of land belonging to the execution-defendant, worth from 1,000 to 2,000 dollars, when four or five acres, which might have been conveniently taken from one side of the tract, could have been sold for a sufficient sum to satisfy the execution. *Held*, on a bill filed by the execution-debtor, that the sale was fraudulent and void.

*Saturday,
May 31.*

ERROR to the *Harrison* Circuit Court:

BLACKFORD, J.—This was a bill in chancery filed by *Daniel Carter* against *James Reed*, *Samuel S. Lansdale*, *Jesse Shields*, and *Jonathan Keller*. The bill states, among other things, that a tract of land belonging to the complainant, had been fraudulently sold on an execution against him, and purchased by *Reed* and *Lansdale*, two of the defendants. The object of the bill was to set aside the sale as fraudulent and void.

The material facts are as follows:—*Shields* was the sheriff of the county, and *Keller* was his deputy. A *fieri facias* against the complainant had been placed in the hands of a previous sheriff, had been levied on the tract of land now in question, and had been returned with an endorsement, that the land had not been sold for want of time. A *venditioni exponas* was afterwards issued, and *Keller*, as deputy sheriff, sold the land to *Reed* and *Lansdale* for the sum of 351 dollars and 25 cents. The

balance due on the execution, at the time of the sale, was only about 20 dollars.    A short time before the sale, the complainant, being about to set out for *New-Orleans*, had a conversation with *Keller* respecting the execution, and had some reason to suppose, from *Keller's* language, that the sale would be post-poned until after his return.    Immediately after the complainant's departure for *New-Orleans*, the sale complained of took place.    The tract of land sold is situated on the *Ohio* river, has a large improvement on it at the upper end, and is very valuable.    It contains 100 acres, and is worth from 1,000 to 2,000 dollars.    Four or five acres might have been conveniently taken from the upper end of the tract, and could have been sold for more than sufficient to pay the small balance due on the execution.    No part of the purchase-money has been received by the complainant; and the whole of it, as is said, is in the hands of the clerk of the Circuit Court.

The decree of the Circuit Court is, that the sale be set aside; that the sheriff be enjoined from perfecting the title to the purchasers; that the clerk pay to the purchasers the purchase-money deposited with him; and that the complainant recover his costs against the defendants, *Reed* and *Lansdale*.

This Court had an opportunity, at the *November* term, 1825, to examine the facts which are now presented to the Court, for the second time, by the same parties.    It was not proper, on that occasion, to decide on the merits of the controversy; but the Court intimated an opinion, that the sheriff's sale could not be sustained in a Court of chancery (1).    That opinion is confirmed by an examination of the record now before us. The sheriff had no right to sell a tract of land, containing 100 acres and worth between 1,000 and 2,000 dollars, merely to raise the trifling sum of 20 dollars; when the sale of four or five acres alone, which might with propriety have been separated from the tract, would have produced the amount due.    The rule for the sheriff, in these cases, is correctly stated by the Court of chancery of *New-York*.    The Chancellor, in a late case there, says, that "the proposition is not to be disputed, that a sheriff ought not to sell, at one time, more of the defendant's property than a sound judgment would dictate to be sufficient to satisfy the demand, provided the part selected can be conveniently and reasonably detached from the residue of the

48

property, and sold separately." *Tiernan* v. *Wilson*, 6 Johns. Ch. Rep. 411. There is a still more recent decision, by the Supreme Court of *New-York*, establishing the same doctrine. In the latter case, an estate, worth 10,000 dollars, was sold by the sheriff to satisfy a debt of 100 dollars; and it appeared that a small part of the property might have been separately sold for a sufficient sum to satisfy the execution. The Court did not hesitate, though no express fraud was proved, to set aside the sale. *Groff* v. *Jones*, 6 Wend. 522. Were Courts of justice to countenance such sales, as the one presented by the record before us, the greatest oppression and injustice would be the necessary consequence.

The sheriff, in this case, in selling 100 acres of valuable land to raise the small sum which he was authorised to collect, committed a breach of duty; his conduct was a fraud on the complainant; and the sale must be set aside. We do not discover, however, any thing in the record which authorises a decree against the defendants, *Reed* and *Lansdale*, for the costs of suit. No particular acts of fraud appear to have been committed by either of them.

That part of the decree, therefore, which sets aside the sale, and enjoins the sheriff from perfecting the title to *Reed* and *Lansdale*, and that part also, which requires the clerk to pay the purchase-money in his hands to the purchasers,—must be affirmed; but that part of the decree which requires the defendants, *Reed* and *Lansdale*, to pay costs to the complainant, must be reversed.

*Per Curiam.*—That part of the decree which sets aside the sale, and requires the clerk to pay, &c. is affirmed: the other part is reversed. Cause remanded, &c.

*R. Crawford* and *H. H. Moore*, for the plaintiffs.
*C. Dewey*, for the defendant.

(1) *Reed* v. *Carter*, Vol. 1, of these Rep. 410.