BOYD v. ELLIS.

1. CONSTITUTIONAL LAW. The fifth article of the amendments to the Constitution of the United States defines restrictions upon the Fed-

eral Government, but has no application to the governments of the several States.

2. SAME: SUMMARY SALE OF PROPERTY. The provisions of chapter 118 of the Code of 1851, authorizing the summary foreclosure of mortgages, was not inconsistent with the Constitution of 1846.

3. LEX LOCI. The interpretation, construction and validity of a contract is to be determined by the law in force at the time, and in the place where it is made; unless it is to be performed in a place beyond the limits of the State, in which case it is governed by the laws of the place where it is to be performed.

4. SHERIFF. In summary proceedings for the foreclosure of mortgages by advertisement and sale under chapter 118, Code of 1851, the sheriff acted as the agent or trustee of the parties, and not in a judicial capacity.

5. DEFECTIVE DESCRIPTION. If the description in a conveyance be so defective that it cannot be known therefrom what estate is conveyed, the conveyance is void.

6. INADEQUACY OF PRICE, A BADGE OF FRAUD. Gross inadequacy of price in the sale of property by a sheriff, is a strong badge of fraud, and when connected with other circumstances tending to show fraud, it becomes conclusive.

7. NOTICE OF DEFECTS. When the mortgagee becomes the purchaser of the premises sold in the foreclosure of his mortgage, he is presumed to have notice of the defects in the proceedings of foreclosure.

8. SALES IN PARCELS. When the sheriff sold several separate and distinct parcels of mortgaged property together, when said several parcels were susceptible of separate sales on terms that would render a sale of but a portion necessary to satisfy the mortgage debt, it was held that the sale should be set aside.

*Appeal from Mahaska District Court.*

SATURDAY, OCTOBER 6.

ON the second day of April, 1853, Boyd purchased of Ellis, certain real estate lying near the city of Oskaloosa, and to secure Ellis in some deferred payments, executed at the time a mortgage on the property. On the 4th day of October, 1855, Ellis proceeded to foreclose his mortgage by notice and sale, fixing the day of such sale upon the 5th day of November. Boyd, in the meantime, applied to the judge of the county court for an injunction, alleging in his petition, a counter claim against Ellis, which he claimed as more

than sufficient to overbalance the amount due on the mortgage debt, and claiming that the proceedings by which Ellis was about to sell the property, were illegal.

The application for an injunction was denied, and on the day of sale, Ellis became the purchaser of the property, he being the only bidder. The evidence shows that the property was sold to Ellis for $175; that in fact it was worth several thousand dollars; that the day of sale was an unfavorable one; that Ellis urged on the sale, though the sheriff desired to postpone it.

Boyd subsequently tendered the amount due and commenced this action to set the sale aside. Various questions have been presented by counsel in their argument, which, so far as material, will be referred to in the opinion.

*Rice, Myers & Rice* and *Loughridge*, for complainant.

*Seevers, Williams & Seevers*, and *Fisher & Crookham* for respondents.

BALDWIN, J.—The law providing for the foreclosure of mortgages by notice and sale, is constitutional. The provisions that are referred to in the amendments to the constitution of the United States, providing that "no person shall be deprived of his life, liberty or property without due process of law, &c.," (which means by judicial proceedings in court,) have no application to the State governments, but are merely restrictions upon the Federal government. *Murphy* v. *People*, 2 Cow. 815; *Barrow* v. *Mayor, &c*, 7 Peters 243. Mr Kent, in speaking upon this subject, says: "As the Constitution of the United States was ordained and established by the people of the United States for their government as a nation, and not for the government of the individual States; the powers conferred and the limitations on powers contained in that instrument, are applicable to the government of the United States, and the limitations do not apply to State governments unless expressed in terms. Thus, for instance, the provision in the Constitution, that

private property shall not be taken for public use without just compensation, was intended solely as a limitation on the exercise of power by the government of the United States, and does not apply to State governments. The people of the respective States are left to create such restrictions on the exercise of the power of their particular governments as they may think proper." 1 Kent, section 19, page 406; 2 Story on Constitution, 517.

In our constitution, in force when this law was passed, were there any provisions that were inconsistent with such a law? We think not. Unless it was repugnant to some constitutional right, the legislature of our State had the undoubted power to pass such a law. It was a legitimate subject of legislation and entirely within their control. While Congress possesses only such powers as are specifically granted or necessary to carry out a given power, the legislature possesses sovereign legislative power over all subjects, except such as are prohibited in the State Constitution. 1 Kent, section 20; 20 Wend. 381; 2 Scam. 273–4. This law being in force at the time and place when the contract was made between Boyd and Ellis, we cannot conceive any equitable grounds upon which the former can complain. The interpretation, construction and rights of a party under a contract are determined by the law in force at the time and place where the contract is to be performed, unless it is to be performed in some other State than where it is made, in which case it is determined by the law in force at such latter place. Savery v. Savery, 3 Iowa 272; Story Confl. Laws, section 558. Parties are presumed to make their contracts with reference to the laws in force, which may be considered as entering into and forming a part of the same; and Boyd may therefore very justly be considered as expressly stipulating that so long as the law remained in force, Ellis might proceed by either a suit in court, or by notice and sale, to foreclose his mortgage. Boyd had an undoubted right to dispose of or incumber his property in any way he saw

proper, provided he did not infringe upon some public act or private right.

The sheriff, in selling the property, and in fact in all his proceedings connected with the foreclosure, acts in a ministerial capacity and not judicially. The amount due on the debt, its validity, and any question connected with the same, cannot be passed upon by him, but the party desiring to test the same, can only do so by removing the cause to the District Court, by injunction. It cannot, therefore, be claimed that the proceedings were void by reason of investing the sheriff with judicial power. He may, rather, under the view we have taken, be considered as one selected by the parties to conduct the sale.

The objections of complainant as to the sufficiency of the notice of the time and place of the sale, as given by the sheriff, are not well founded. Under sections 2071–2–3–4 and 5, four weeks notice is sufficient. The mortgage was void for uncertainty. It describes the property as being parts of certain sections, without designating what township or range the sections are in. There are different townships in the county embracing the same numbered sections and parts thereof as those named in the mortgage. If a description in a conveyance be so defective that it cannot be known what estate was intended, the conveyance is void. 4 Mass. 204; *Bosworth* v. *Farenholz*, 3 Iowa 85. We do not think, however, that the complainant in this proceeding can avail himself of this ground of relief. He has treated the mortgage throughout as being a lien on the property intended in the conveyance, and admits in his petition that the property sold was that intended in the mortgage, and asks no relief on the ground of mis-description or the invalidity of the mortgage. This view of the question renders it unnecessary to consider the various other questions presented by counsel under this head.

The evidence. shows that the property sold consisted of one hundred and fifty-nine acres; that the same was worth

several thousand dollars; that it was bid in by Ellis for one hundred and seventy-five dollars. The evidence shows not only the amount bid was inadequate, but grossly so. Gross inadequacy of price, of itself, is a strong badge of fraud, and though not conclusive, yet when coupled with other circumstances tending to prove fraud, becomes controlling and conclusive evidence. 4 John Ch. R. 120; 6 Ib. 411; 1 Story Eq. Juris. section 244n. In this case, such evidence is not wanting, and to our minds it is irresistible.

. In addition to the price paid, the evidence shows that prior to the sale, the counsel for Ellis had said he doubted its validity; that Ellis had told various persons that he intended to bid the amount of his claim, which, judging from the notice of sale, bidders would have fixed at several hundred dollars; that the day of sale was unfavorable; but few were present, and no bidders except Ellis; that the sheriff desired to postpone the sale on account of there being no bidders, the unfavorable day, &c., but that Ellis urged him on; that he induced the sheriff to make the sale by assuring him it was not his duty to find bidders, and that he would stand between him and all legal liability. These are some of the circumstances shown in connection with the sale, and we have no hesitation in saying that a sale under such circumstances should not be sustained.

The defendant Ellis being the mortgagee and purchaser, buys with full notice of all the defects, and if no actual notice had been shown, the law would presume such notice to him. 2 Gilm. R. 166; 3 Ib. R. 32; 2 G. Greene 389; Code of 1851, section 2081. In *Longworth, et al*, v. *Butler, et al*, the court say, in case of a sale by a trustee or mortgagee, the sale will be closely watched in equity, and upon the slightest proof of unfair conduct or a departure from the power conferred, they will set the sale asdie. 3 Gilm. 32; 4 John. Ch. R. 120; 3 John. Ch. R. 292; 1 Black. Com. 110; 3 Black. 376.

This sale must be set aside for the further reason that the

evidence and pleadings both show that the property was sold in a lump in place of being sold in distinct parcels. One forty acre tract of the property was located over a mile from the residue. One forty lay near to the city of Oskaloosa, and could have been sold in lots varying from one acre up to larger quantities, and at the time of the sale a few acres at a fair price would have brought sufficient to have paid the amount of respondent's claim.

In *Reed* v. *Carter*, Judge BLACKFORD says : " The sheriff has no right to sell 100 acres of land to pay a debt of $20, when a sale of four or five acres alone, which might have been separated from the tract, would have produced the debt. * * * No particular acts of fraud appear to have been committed by either party, but the sheriff committed a breach of duty. His conduct was a fraud upon complainant, and the sale must be set aside." 3 Blackf. 376; 6 John Ch. R. 411; 6 Wend 522. In *Dougherty* v. *Lenthucon*, the court of Kentucky say : " An objection to the plaintiff's title, more serious than that which has been noticed, is founded upon the manner of the sale. * * * It is entirely manifest that the offering of the two tracts, or of his interest in them jointly for the satisfaction of the execution, was necessarily calculated, if not intended, to prevent competition and thus produce a sacrifice by requiring those present to bid for two tracts instead of one." The court, after saying that it was a gross abuse for the sheriff thus to sell, further adds, that such a sale will be quashed " when the plaintiff in execution, who being present, may be presumed to have controlled the sale, was himself the purchaser." 8 Dana 195. In *Rawley* v. *Brown's Adm'r*, the Supreme Court of Pennsylvania say : " It is a rule of this court to disallow, in every case, a lumping sale by the sheriff, when, from the distinctness of the items, he can make distinct sales. It is essential to justice and to the protection of unfortunate debtors, that this should be the general rule. Any other would lead to the most shameful sacrifice of property." 1 Binney 61.

In *Penn, et al* v. *Craig, et al*, Chanceller Pennington says : "The duty of the sheriff to sell property capable of a natural division, in separate parcels, is so obvious that we should suppose that no officer, desirous of discharging his trust, should ever fail to do so. If plainly divisible, the property should be sold in parcels. The great object in regulating judicial sales, is to make the property bring the greatest amount. This is desirable for both parties. To sell at one time and in one parcel, different parcels of property which have no connection with each other, is to do away with all competition and strife at the sale, and afford the most favorable opportunity to speculate on the misfortunes of the defendant in execution. The practice, therefore, of selling in one parcel, property which is separate, should be frowned upon and discountenanced as unjust and oppressive." 1 Green. Ch. R. 497.

The foregoing views sufficiently indicate that the sale should be set aside; and we do not deem it, therefore, material to consider the question of redemption and some other questions that have been presented in the case.

The decree of the District Court is affirmed.