## PENN v. CLEMANS.

1. **Taxes: EXISTING LAWS:** The validity of acts touching the assessment, levy and delinquency of taxes is determined under the laws in force at the time they were done. A tax sale is governed by the law in force when it is made.

2. **Homestead: TAXES.** Where under the laws in force at the date of the levy of a tax, the homestead was exempt from sale for any taxes except those levied thereon, though not separately listed, a subsequent change in the law would not effect the right of the owner. At a sale made for such taxes it could not be sold in connection with other lands, in such manner as to compel the owner to pay the taxes assessed upon such other lands in order to save his homestead from absolute loss.

3. Tax sale: REDEMPTION. A party having no interest in land has no right to redeem it from a sale made for taxes. A redemption by a party having no right to redeem, does not divest the title of tax purchaser or inure to the benefit of the real owner.

4. —— SALES IN GROSS. Sales of several distinct parcels or subdivisions of land in gross, for taxes, is irregular and will not be upheld. A purchaser of lands in gross will not be permitted to take advantage of his own wrong by objecting to a redemption by parcels.

5. —— REDEMPTION: PRO RATA PAYMENT. In redeeming but a part of lands sold in gross, the purchaser, or the clerk when acting in his stead, has the right to receive only the money paid at the tax sale for the part redeemed, with the penalties and interest thereon, regardless of the fact whether the property was assessed and taxed at more or less than its actual relative value.

*Appeal from Delaware District Court.*

SATURDAY, JANUARY 6.

IN 1857 and 1858, the plaintiff was the owner of the southeast quarter and the south half of the northeast quarter of section nine, township eighty-eight, north of range four, west, and had been such owner for several years prior to that time. During the plaintiff's ownership thereof, and up to the present time, he had resided with his family on said land, in such manner as to constitute the statutory portion thereof (forty acres) his homestead. On the 25th day of November, 1859, the plaintiff selected his homestead, and caused it to be marked out, platted, and on the following day, recorded. Such selection embraced about thirty-three acres of the first, and about seven acres of the last above described land.

On the 30th day of December, 1859, all of the above described lands, except that selected as a homestead, was sold under a decree against the plaintiff, rendered by the District Court of the United States for the district of Iowa (northern division), and were purchased by A. E. House. On the 18th day of February, 1863, all of the above des-

cribed lands in gross, including the homestead, were sold at a tax sale, to Leroy House, a brother of the purchaser at the decree sale, for the taxes of 1857 and 1858. The taxes were assessed upon the lands, under the description as given above, and each description was assessed at the same value per acre.

The plaintiff, after the decree sale, and before the tax sale, repeatedly offered to pay to the treasurer the proportion of taxes due upon his homestead, and made such offer to three successive treasurers, each of whom refused to receive any portion of the taxes unless paid upon the whole of the two descriptions (two hundred and forty acres), as above. Before bringing this action, the plaintiff tendered to the defendant, who is the district clerk for the county of Delaware, the proportionate amount, according to quantity, necessary to redeem his homestead from the tax sale, and demanded a certificate of redemption (the time for redeeming, three years, not having expired), but the defendant refused to accept the money or to give the certificate, and required the plaintiff to pay the sum necessary to redeem the whole, two hundred and forty acres, before he would issue a certificate of redemption for any part.

The plaintiff thereupon brought this action in the nature of a petition for mandamus, upon an agreed statement of facts, in substance as herein stated, to compel the defendant to accept his tender and issue his certificate of redemption. It is also agreed that the real value of the homestead land is greater than any other same quantity of the two hundred and forty acres, and if it shall be held that redemption must be made by real value, instead of (assessed value and) quantity, the plaintiff shall not be prejudiced, but may pay such additional sum as required. The District Court held, that plaintiff could redeem by paying proportionate

as to quantity, and granted the mandamus accordingly. The defendant appeals.

*George Wattson* for the appellant.

*First.* The State has a lien for taxes, and the purchaser at a tax sale acquires this lien, which extends to all of the land as assessed and sold.

*Second.* Where lands were sold in 1863, for taxes of 1857 and 1858, and the original owner, after the tax sale, selected, platted and recorded a homestead out of a portion sold, and then tendered to clerk a part of the amount required to redeem the whole land; the clerk was not authorized to receive it, nor compelled by law to receive it.

*Third.* In the case above stated, where the amount tendered was less than the proportional share of such tax upon the selected homestead, according to value, and the owner failed to have it separately listed, and failed to have the assessment corrected before the sale, mandamus will not lie against the clerk to receive the amount tendered. Code of 1851, § 1248; Rev. of 1860, § 2280; Code of 1851, § 1255; Rev. of 1860, § 2287; Acts of 6th Gen. Assembly, p. 195, § 13; Acts of 7th Gen. Assembly, p. 315, §§ 31, 32; Acts of 1856 and 1857, p. 195, § 12; Acts of 1857 and 1858, pp. 313, 314, §§ 26, 27; Acts of 9th Gen. Assembly, ch. 173, p. 225, § 9; Acts of 7th Gen. Assembly, pp. 321, 322, §§ 50, 54; Rev. of 1860, § 787.

*T. S. Wilson* for the appellee.

1. The law requires the treasurer to sell the land in the smallest parcels practicable. The evidence shows that this was not done. Sec. 766, page 120 of Revision; *Steads Exrs.* v. *Course,* 4 Cranch, 403; *O'Brien* v. *Coulter,* 2 Blackf., 421; Black., on Tax Tit., 336, 337.

2. The treasurer had no authority to sell the homestead with the other property which belonged to House. Rev., § 766. The amendment to that section continued (sec. 9, p. 225 of Laws of 1862), provides that "in all cases where the homestead is listed separately as a homestead, it shall be liable only for the taxes thereon."

3. Penn will be entitled to a certificate of redemption for all the land he redeems, *but he has no right to redeem any land in which he has or claims no interest.* Suppose he wanted to redeem the land owned by A. E. House, could not the brother, House, properly object on the ground that Penn had and claimed no interest in his brother, A. E. House's land? Certainly.

COLE, J. — The important facts in this case occurred in the following chronological order: the assessment and

*1. TAXES: existing laws.* levy of the taxes for the years 1857 and 1858; the platting and recording of the homestead in November, 1859; the decree sale of all the lands, except the homestead in December, 1859, and the sale for taxes (of 1857, 1858) in February, 1863. At the dates of the levy of the taxes, the platting of the homestead and the decree sale, it was expressly provided by statute: that "the homestead is liable to be sold for no taxes save that which is due on itself exclusively." Code of 1851, § 501; Laws of Seventh Gen. Assembly (1858), ch. 152, § 54, p. 322; Revision of 1860, § 766. "But the homestead is liable for taxes accruing exclusively thereon, and the whole or a sufficient portion thereof may be sold to pay the same." Code of 1851, § 1248; Revision of 1850, § 2280.

It was also provided by the Code of 1851, Laws of 1858, and Revision, *supra*, that when lands were sold for taxes, the person who would pay the amount due for the smallest portion, was to be considered the purchaser; and that when such portion was half or more, it should be

taken from the east side, except that town or city lots should be divided lengthwise; and that when the portion was less than half it should be taken from the southeast corner in a square form, as nearly as convenient. It was then provided that the preceding provisions are subject to the following qualifications; the homestead is liable to be sold for no tax save that which is due on itself exclusively, and the above directions concerning the division of a tract of land, shall be modified so as to meet this requirement, and to that end the quantity of land bid may be obtained by drawing the division line in any direction or form so as to avoid the homestead; and when the homestead constitutes part of the tract sold and is not yet ascertained, the court may, at the suggestion of either party, cause a proceeding to be had similar to that required in relation to mechanic's liens, for the ascertainment of the homestead, and in all cases of such sales it may take the requisite order and proceedings to ascertain the land sold, or to set it apart from the homestead.

While the language of this portion of the statute, and especially the last half of what is styled "qualifications," is very greatly wanting in clearness and perspicuity, it is nevertheless reasonably certain, from the whole section taken together, that it was the legislative intent to subject the homestead for no tax except upon itself, and to exempt it from sale, even for taxes thereon (as from execution, when liable to sale thereunder), "except to supply the deficiency remaining after exhausting the other property" of the debtor, contiguous thereto, and which is liable in common with it, to sale for taxes.

This provision of the statute was, however, repealed by the Laws of the Ninth General Assembly (1862), ch. 173, § 9, p. 225, and there was enacted in place thereof, as follows: "In all cases where the homestead is listed separately as a homestead, it shall be liable only for the taxes thereon."

This provision of the statute was in force at the time of the tax sale, and still continues in force. But the taxes being assessed, levied and becoming delinquent under the former law, the right of the parties, as to these several steps, are to be adjusted under that law. *Adams* v. *Beale et ux., ante.* So far as the sale is concerned, it will, of course, be governed by the law in force at the time it took place, and which authorized it.

The homestead in this case was platted and recorded, and claimed and occupied as such, at the time of the sale, and had been for more than three years previous thereto. When the property was assessed and the tax levied, the law did not require that the homestead should be listed or assessed separately, or as a homestead, in order to exempt it from any tax except that due exclusively thereon; but it was only liable for that tax in any event or however listed. A subsequent change of that law could not affect the rights of the parties which became vested or fixed by it.

Since the homestead was not liable, under the law, for any taxes except those due upon itself exclusively, it certainly is not competent for the officer making the tax sale, or the person purchasing thereat, to extend the liability of the homestead by a sale and purchase of it, in connection with other lands. The exemption of the statute would be of little avail if third persons could thus defeat its plain letter and intent, by selling the homestead in connection with other property, and compelling the owner to pay the taxes upon such other property, for which his homestead is not liable, in order to redeem it or save it from total loss.

2. HOMESTEAD: taxes.

And again, it is settled beyond controversy, that a party having no interest in land, has no right to redeem it from a sale for taxes. *Byington* v. *Bookwalter*, 7 Iowa, 512. And if it turns out that the person who

3. TAX SALE: redemption.

pays his money for the purpose of redemption, had no interest whatever, to be protected by the redemption, his act of redemption can neither vest title in him, or divest that of the tax purchaser. Blackwell on Tax Titles, 1st ed., 496. Nor can such act of redemption inure to the benefit of the owner, who had the right to redeem. *Byington* v. *Bookwalter*, *supra; Masterson* v. *Beasley*, 3 Ohio, 301. If the plaintiffs in this case should, therefore, pay the amount requisite to redeem the whole of the two hundred and forty acres within which his homestead is situated, since he has no interest in any except his homestead, such act would neither invest him with any title to the land outside of his homestead, nor divest the tax purchaser, Leroy House, of his right to a tax deed thereto, and the title derived thereby. There is, then, neither reason nor justice in requiring him to do an act which cannot be of advantage to himself or the owner, nor, if not done, of detriment to any other person. Neither is there any mutuality; for, if the tax purchaser or clerk may require the plaintiff to pay his money for redemption, the plaintiff cannot *compel* either to accept the redemption money, nor can he demand or derive any equivalent for his money when paid.

And, finally, it is a well settled rule, and one which has been frequently recognized by this court, that, even in

4. — sales in gross. execution sales (where the rule would not be as strictly applied as in tax sales), a sale of several distinct subdivisions or parcels of land in gross, is irregular and will not be upheld. *Boyd* v. *Ellis*, 11 Iowa, 97; *Singleton* v. *Scott*, 11 Id., 589; *Grapengether* v. *Fejervary*, 9 Id., 163; *Bradford* v. *Limpus*, 13 Id., 424; *Lay* v. *Gibbons et al.*, 14 Id., 377. This rule has been recognized and enforced in very many cases of tax sales. *Ainsworth* v. *Dean*, 1 Foster (N. H.), 400; *Stead's Ex'rs* v. *Course*, 2 Dallas, 403; *O'Brien et al.* v. *Coulter et al.*, 2 Blackf., 421; *Register* v. *Bryan*, 4 Hawke, 17; *Hodge* v. *Wilson*,

12 Smedes & Marsh., 498; *Boisguard* v. *Johnson*, 23 Miss., 122; *Corporation of Washington* v. *Pratt*, 8 Wheat., 686; Blackwell on Tax Titles (1st ed.), 334, *et seq.*

In this case there was a palpable violation of this well settled rule. The officer sold not only that which was assessed in two distinct assessments, but which really embraced six distinct governmental subdivisions of this identical land. The purchaser stands charged, most undeniably, with knowledge of this wrongful act, and to permit either the officer or purchaser to take advantage of this wrong on their part, to defeat the right of redemption, would be to override that well settled rule of law and common justice, that no man shall take advantage of his own wrong.

The redemption clauses of revenue statutes are to be construed with liberality in favor of those whose estates will be otherwise divested, and especially should this liberal construction obtain under a statute like ours, which gives ample indemnity to the purchaser, with the most liberal interest and penalties against the owner. *Dubois* v. *Hepburn,* 10 Peters, 1; *Burton* v. *Hintrager*, 18 Iowa, 348.

Since the homestead was assessed, and the tax levied upon it at the same rate per acre as the remaining portions of the two hundred and forty acres, it follows that the purchaser paid therefor *pro rata* as to quantity. And a purchaser at a tax sale, or the clerk in his stead, only has the right to demand or receive the money paid at the tax sale, with the penalties and interest thereon; and this, too, regardless of the fact as to whether the property was assessed and taxed at more or less than its actual or relative value.

5. —— redemption; pro rata payment.

Affirmed.