## THE CORNING TOWN CO. V. DAVIS.

### LOOMIS V. SAME.

1. **Tax Sale**: FAILURE TO REDEEM: NEGLIGENCE OF OFFICER. The agent of a party who owned several parcels of land left with the clerk a sum of money with directions that the clerk and treasurer examine the tax records, pay all taxes due upon his principal's lands, and redeem from tax sales of the same, if any had been made; they subsequently returned to him a portion of the money, with certain tax receipts and the assurance that there was no record of sale, that of the sale to defendant not being discovered until he demanded a deed: *Held*, that the agent was justified in relying upon the assurance of the officers that no sale had been made, and that the owner was not chargeable with negligence in failing to discover the fact of the sale. DAY, J., *dissenting*.

2. ———: REDEMPTION: LAW TO BE LIBERALLY CONSTRUED. The law authorizing redemption from tax sales is to be liberally construed in favor of the land owner, whose estate will be divested by the sale.

3. ———: ———: MISTAKE OF OFFICER. It is the duty of the proper officers to impart correct information to parties seeking to redeem from tax sales, and their mistake, error or negligence, will support the right of redemption after the execution of the tax deed.

4. ———: ———: ———. If the land owner pays, tenders, or in good faith and without negligence attempts to pay his taxes, and fails through the fault of the officers charged with the duty of receiving the money and making the proper records, a sale and deed of the land will not be protected.

5. ———: ———. If the owner has done what the law requires of him to redeem, the tax deed will not divest his title.

6. ———: ERRONEOUS ASSESSMENT. The fact that land was assessed as belonging to an unknown owner, when the records of the county disclosed the name of the owner, will not invalidate a sale of the land for taxes. The presumption will obtain that the assessor did his duty and that the name of the owner was, in fact, unknown to him.

7. ———: REDEMPTION. Where, by the fault of the officers of the county, plaintiff failed to redeem his land from tax sale, although he had tendered the amount necessary to do so, it was *held* that he might subsequently redeem by paying the amount which would have been required to do so at the time the tender was made, with interest thereon at six per cent.

8. ——: ——: COSTS. No tender of the amount to which the holder of the tax deed was entitled upon redemption ever having been made to him, it was *held* that the costs of an action to set aside the deed should be paid by the plaintiff.

*Appeal from Adams District Court.*

Tuesday, October 24.

THESE cases, prosecuted in chancery, involve substantially the same facts, and the same questions of law arise in each. The Corning Town Co. seeks to set aside a tax title held by defendant, to the e ½ se ¼ of se ¼ section 34, T. 72, R. 34, and the other plaintiff, Loomis, upon the same state of facts, seeks to avoid a like title upon the west half of the forty acre tract of which the land claimed by plaintiff in the other case is a part.

The defendant claims the land under a tax sale, made October 20, 1865, for the delinquent taxes of 1863 and 1864, and a school tax for 1857, upon which a treasurer's deed was executed October 6, 1868.

The court below entered a decree setting aside defendant's title, and rendered judgment against him for costs, from which he appeals to this court. The facts upon which the points ruled in the opinion are based are found therein.

*F. M. Davis, pro se.*

*Stuart Bros.,* for appellee.

BECK, J.—An opinion of this court was announced in December, 1872, affirming the judgments of the District Court. A rehearing was allowed upon a petition of defendant, and thereupon a majority of the court, as then constituted, reached a conclusion differing from the first decision, and an opinion was filed reversing the decision of the court below. Thereupon plaintiffs filed their petition for a rehearing and the causes have been again argued and submitted.

The questions raised in the cases touching the sufficiency and regularity of the sale and proceedings prior thereto, upon

which defendant's tax deed is based, will be first considered, in view of the fact that a majority of the court hold the tax title is defeated by reason of efforts made by the land owners to redeem from the tax sale. The facts upon which this conclusion is based, briefly stated, are as follows:

After the tax sale the president of the Corning Town Company, one of the plaintiffs, and agent of the plaintiff in the other case, applied to the treasurer and clerk of the District Court of Adams county, the land being situated in that county, to pay all taxes due or delinquent upon the property of plaintiffs there assessed, and to redeem from all tax sales, that might have been made, of such lands. A written list of the property of the parties, including the lands involved in this action, was given to these officers, and they were charged to make a careful examination of the books of the county, for the purpose of ascertaining delinquent taxes and tax sales. A sum of money deemed sufficient was paid to them for the purpose of paying taxes and redeeming from sales. An examination was made, certain taxes were paid, and a sum of money returned to the plaintiffs, with a report that no farther amount was due for taxes or was required to redeem the lands. The treasurer and clerk assured the plaintiffs that all taxes were paid and all sales redeemed from. But the officers did not discover the sale under which defendant's deed was made, until the time for redemption had expired, and prior thereto made no report to plaintiffs that such sale had been made. The amount of money they received from plaintiffs and repaid to him was sufficient to redeem from the tax sale under which defendant claims title. The plaintiffs relied upon the officers to make the examination of the records, and made no attempt to do so themselves. They also did not examine the papers received from the treasurer and clerk when they reported the condition of the taxes. The owners of the land had no information of the tax sales until after the time for redemption had expired.

II. To the decision last announced, reversing the judgment of the court below, I, at the time, dissented, and presented my views of the law in an opinion, consisting largely of the first opinion filed in the cases, so far as it treats

of the point upon which our present decision turns. I am unable to present the conclusion of the majority of the court and arguments supporting it in language and manner more satisfactory to myself, than are employed in that dissenting opinion. I will, therefore, reproduce it here. The conclusions reached therein, as I have intimated, are concurred in by the majority of this court as now constituted:

"The conclusion and arguments supporting it, set out in the first opinion filed in these causes and then approved by all of us, are now, to me, entirely satisfactory, and I think that opinion so fairly and clearly presents the grounds upon which, in my opinion, our decision should be based, that I present it here, with a few additional thoughts, as an expression of my views upon the question involving plaintiff's equitable right to redeem from the tax sales. It is as follows:

"'2. As we have seen, the rights of the plaintiffs in the property in controversy, depend solely upon the effect to be given to their efforts to redeem from the sale.

"'The testimony clearly shows that in 1867, one year before the time for redemption expired, D. N. Smith, president of the Corning Town Company, and agent of Loomis, left with the clerk of the District Court money amply sufficient to pay all the taxes upon this land, and redeem from all sales, and that he directed said clerk and the treasurer of said county to examine carefully the tax records, pay all taxes, and redeem from all tax sales, if any had been made; that at that time he was not aware of the sale to defendant; that they examined the records, as they supposed, carefully, but failed to find any record of the sale to defendant; that they assured Smith, when the tax receipts were handed to him, that the land was cleared of every charge on account of taxes or tax sales, and refunded to him a portion of the money advanced. Further, that the record of the sale to defendant was not discovered until the 6th day of October, 1868, when defendant demanded his deed. This effort of redemption failed because of a mistake upon the part of the officers through whom the redemption had to be effected. In *Noble et al. v. Bullis*, 23 Iowa, 559, it was held that such

1. TAX SALE: failure to redeem: negligence of officer.

VOL. XLIV—40

mistake entitled the owner of land to equitable relief. It is true that a very high degree of care upon the part of the owner might have discovered the fact that the redemption was incomplete. But such a degree of care would almost always prevent a mistake of fact, and if equity should interfere to relieve against a mistake only when such caution had been exercised, this branch of equitable jurisdiction would be of very rare occurrence. Surely, it is requiring too high a degree of diligence upon the part of the owner, to require him, at his peril, to ascertain the fact of the existence of a tax sale, which those intrusted with the tax records, notwithstanding the skill acquired in their offices, and their knowledge of the tax books, were unable, after careful research, to discover.

"'The rules of law are adapted to the conduct, not of the most alert, nor of the most inattentive, but to that of those of reasonable and ordinary care and diligence in the management of their affairs.

"'The redemption law is to be liberally construed. The tax purchaser is not wronged if he receives the amount advanced together with the penalty which the law prescribes. It has even been held in one case that if the purchaser at a tax sale is indebted to the taxpayer for more than the amount of the tax, that this fact operates as an immediate redemption, and renders the deed inoperative. *Garknie v. Blake*, 27 Miss., 677. But we need not go to that length in order to hold these plaintiffs entitled to equitable relief. It seems to us that, having made this offer to redeem before the defendant became entitled to his deed, they still have the right to do so. This view is in strict accord with *Noble et al. v. Bullis*, *supra*. It is not in harmony with the principle recognized in *Bolinger v. Henderson*, 23 Iowa, 165, which, in so far as it conflicts with the views here expressed, must be regarded as overruled.'

"In my opinion, *Noble et al. v. Bullis* and *Bolinger v. Henderson*, *supra*, are in utter conflict. There is no accord in the principles upon which they are respectively based. The later case, therefore, in effect overrules the earlier one. The one first named must be regarded as authority now.

" It is a fact which cannot be disputed, that all persons who pay taxes or redeem from tax sales resort to the proper county officers, and not to the county records for information as to the amount of their taxes, the existence of sales from which redemptions have not been made, and the like. The records, while they may be accessible and intelligible to the tax payer, are not usually understood readily by persons doing business in the county offices. The officers uniformly impart to the taxpayer all information in regard to the condition of his taxes found in these books. And it is also true that information received from these officers is always relied upon by the taxpayer. Indeed, it is imparted in the discharge of official duties, and the law will justify such reliance thereon. It seems to me that more than ordinary prudence and care would be satisfied in relying upon information received from these county officers. I do not, therefore, think that the party seeking to pay the taxes, and to redeem from the tax sales, in the cases before us, was negligent in relying upon the information of the county officers that redemption was made by them from all sales. He was not negligent in failing to examine his tax receipts and certificates of redemption, for the confidence, which the law justified him in possessing, in the correctness and good faith of the officers examining the records and executing the redemption certificate at the time of the transaction, he was authorized to retain. Surely, if the taxpayer was authorized to believe, at the time he received them, that the papers were correct, and covered all taxes due and sales made, he could rest in such belief, and no degree of prudence and care would require him, the next day, or in a month, or a year, to abandon trust and confidence in the officers of the county, and, therefore, to examine the documents for himself. It is true that upon such an examination it would have appeared that he held no evidence of the payment of taxes for certain years. But that matter escaped the attention of the treasurer in the discharge of his official duty; the taxpayer could not be regarded as negligent in failing to discover what had slipped the notice of the officer. But, admit that the papers showed that the taxes for certain years were not paid. They did not

show a sale. Because the taxes were delinquent, it did not follow that the land had been sold. The taxpayer had applied to both treasurer and clerk to redeem from all tax sales. He was advised. that the papers returned to him were evidence that he had done so.

"Now, it seems to me, because he could have been informed by examining the certificates and receipts, that his taxes were not all paid, he cannot be charged with negligence in not discovering the existence of a tax sale from which he had not redeemed. He was possessed of no evidence of such a sale. In my opinion, the decision of the District Court upon this point is correct."

III. The controlling doctrines above announced are amply supported by authority. The point, that the law authorizing
2. ——: re-  redemption is to be liberally construed in favor of
demption:
law to be lib-  the land owner, whose estate will be divested by
erally con-
strued.  the tax sale, has been directly ruled by this court.
*Burton v. Hintrager*, 18 Iowa, 348; *Penn · v. Clemans*, 19 Iowa, 372 (380).

IV. The other point, that as it was the duty of the treasurer and clerk to impart correct information to the agent of
3. ——: ——:  plaintiffs, applying to them to redeem the lands
mistake of
officer.  from tax sales, and to pay all delinquent taxes
thereon, he was justified in relying upon their representations, and their mistake, error or negligence is sufficient ground to support the right of redemption after the tax deed was executed, finds support in the following cases. *Babb et al. v. Tompkins*, 47 Pa. St., 359; *Baird v. Cahoon*, 5 W. & S., 540; *Laird v. Heister*, 24 Pa. St., 452; *Dougherty v. Dickey*, 4 W. . & S., 146; *Price v. Mott*, 52 Pa. St., 315; *Lamb v. Irwin*, 69 Pa. St., 436; *Dietrick et al. v. Mason*, 57 Pa. St., 40; *Van Benthuysen v. Sawyer et al.*, 36 N. Y., 150; *Kenworthy v. Austin*, 23 Ark., 375.

V. The purpose of the law, in divesting the estate of a landowner upon sales and deeds executed thereunder for delin-
4. ——: ——:  quent taxes, is to coerce the negligent and unwil-
——.  ling citizens to obedience of the law in payment
of their taxes. It is not directed against those who, in the

exercise of proper diligence, and in good faith, attempt to obey the law and discharge their duty as good citizens by the payment of taxes levied upon their property. If the land-owner pays, tenders, or in good faith and without negligence attempts to pay his taxes, and is defeated in his efforts to discharge them by the fault and negligence of the officers charged with the duty of receiving the money and making proper records thereof, a sale and deed of the property taxed will not be enforced. *Griffing et al. v. Pintard*, 25 Miss., 173; *Doe, ex dem. Jones, v. Burford*, 26 Miss., 194; *Cowles v. Frear*, 43 Ark., 633; Blackwell on Tax Titles, pp. 409, 410.

VI. In accord with these principles this court has held that in case the land-owner does what the law requires of him, in order to redeem his land from tax sale, a deed made thereon will not divest his estate. *Fenton v. Way*, 40 Iowa, 196. And if the land-owner in good faith intends to redeem his lands, in a case where there were two sales, and is misled by the unauthorized act of the treasurer in making more than one sale, we held that he could redeem after the expiration of the time for redemption as prescribed by the statute. *Shoemaker v. Lacey*, 38 Iowa, 277.

The decisions in these cases are based upon the doctrine that the tax deeds acquire no validity from the fact that the records upon which they are based are regular, and show that the lands have not been redeemed. If the land-owner has not been in default, and in compliance with the law has paid, or attempted to pay the taxes or redeem from the sales, and has been defeated of his purpose through the negligence or fault of the officers intrusted with the duty of making and keeping the tax record, he may redeem after the tax deed has been executed. The cases in hand by their facts are brought within the rule of these decisions.

VII. We come now to the second branch of the case, which involves the sufficiency and regularity of the tax sale and other prior proceedings upon which it was based. Plaintiffs insist that the sale was void, and some of the taxes for which the land was sold were illegal. If this be so they ought not to be required to redeem from the tax sale.

The view of the questions here presented taken in the first opinion filed in these causes accords with the convictions of this court as it is now constituted. That opinion upon the points of the case now under consideration is reproduced here as expressing the present conclusions, and the grounds upon which they are based.

"In May, 1857, D. N. Smith owned the land in controversy, and caused five and 43-66-100 acres off of the east side thereof to be sub-divided into town lots, and surveyed and platted as a part of the town of Corning. On the 9th day of August, 1859, D. N. Smith conveyed the lots above mentioned, together with the remainder of the · east half of said forty acre tract, to the plaintiff, the Corning Town Company. On the 11th day of November, 1859, Smith conveyed the west half of said 40 acres to the plaintiff, George Loomis, who owns a greater portion of the stock of the Corning Town Company. These deeds were recorded shortly after their execution. For the years 1863 and 1864 the said forty acre tract was assessed in a body, owners name unknown, at $160. It was extended upon the tax list in the same manner that it was assessed; the total tax for the year 1863 being $1.68, and for 1864, $2.56. The town lots included in this 40 acres were also separately assessed for the years 1863 and 1864, and in October, 1867, D. N. Smith paid the taxes thereon. On the 2d day of October, 1865, said land was sold in a body to Frank M. Davis, for the taxes of 1863 and 1864, and a delinquent school tax of nine dollars for 1857; at that time the land was unimproved, and unoccupied. It is claimed that there are certain errors and irregularities in the levy of the school tax, and that at the time of the sale there was no law authorizing a sale for the same, and that the sale for the taxes of 1863 and 1864 is void because made in mass, distinct portions of the land being at the time the property of different owners. It is to be noted that all the decisions which have hitherto been made in this State respecting sales in gross, as explained in *Corbin v. De Wolf*, 25 Iowa, 124, apply to cases where tracts separately assessed have been sold together, or where the tracts are, in fact, separate and distinct, as two forties

6. ——: erroneous assessment.

in different sections.   (See *Corbin v. De Wolf*, *supra*, in which a sale of 160 acres in gross, as assessed, was sustained.)

"Section 737, of the Revision, provides that when the name of the owner of any real estate is unknown, and the assessor finds it impracticable to obtain the same, no one description shall contain more than 40 acres, and the words, "owners unknown" shall be inscribed at the head of the page.

"Sec. 745 provides for the entry on the tax list in the same manner as assessed.

"Sec. 764 of the Rev., as amended by Sec. 5, Chapter 24, Laws extra session, 8th General Assembly, simply requires that the advertisement shall contain a description of the several parcels to be sold; and section 765 requires that the treasurer shall offer for sale separately each tract or parcel advertised.

"The land was assessed in the smallest governmental subdivision, and all the subsequent proceedings, including the sale, were regularly conducted by the same description, so far as the testimony discloses.   There was no illegality or irregularity connected with the sale.   The only fact that can be urged against the title of defendant is that at the time of the assessment the records show that the east half of the lands was owned by the Corning Town Company, and the west half by George Loomis.

"It is doubtful whether the assessor is required to look to the records for the purpose of ascertaining the state of the title.   If it is his duty to do so, we cannot conceive of a case in which he could be authorized to say the owner was unknown, for in every case where the title has passed from the general government, and the lands have become taxable, the records would show the title in some one.   The presumption is that the assessor did his duty, and that the name of the owner was, in fact, unknown to him.   (Blackwell on Tax Titles, 2d ed., 145.)

"But conceding that he should have examined the record, and assessed each portion of the land to its respective owner, yet the error is not of such a character as to render the tax and the subsequent sale void.   This is not a case of no assessment; at the most it is one simply of erroneous or irregular

assessment. If the owners of this property had attended at the office of the treasurer for the purpose of paying their taxes, as Sec. 756 of the Rev. makes it their duty to do, the error would have been discovered, and could easily have been corrected.

"Sec. 753 of the Rev. provides that 'in all cases where real property, subject to taxation, shall not have been assessed by the township assessor or other proper officer, it is hereby made the duty of the owner thereof * * * to have the same properly assessed by the treasurer, and to pay the taxes thereon; and no failure of the owner to have such property assessed, or to have the errors in the assessment corrected, and no irregularity, error or omission in the assessment of such property shall affect in any manner the legality of any taxes levied thereon, nor affect any right or title to such real property which would have accrued to any party claiming or holding under and by virtue of a deed executed by the treasurer, as provided for by this act, had the assessment of such property been in all respects regular and valid.'

"It seems needless to urge anything further than this positive provision of the statute to show that the error complained of does not invalidate the sale. Nor do we regard of any importance the fact that a small portion of this land was also assessed as town lots for the years 1863 and 1864. The lots were laid out in 1859. In 1860, 1861 and 1862, the land in question was assessed together as unknown, and the taxes for those years were paid by George Loomis.

"But the county and owners of the land seem, at this time, to have ignored the division of a part of this land into town lots. If the taxes on those lots had been paid for the years 1863 and 1864 before the sale of the 40 acres to defendant, it might well be claimed that such payment would defeat the sale of so much of the land as was included in the town lots. But the payment of these taxes was not made until two years after the sale to defendant. Whatever right the fact of the satisfaction of the taxes upon the entire 40 by a sale thereof may afford the plaintiffs to have refunded to them the taxes paid upon their lots, we are of the opinion that, in

view of their own course of dealing, and that of the county in regard thereto, they cannot invalidate the sale because of such subsequent payment.

"It follows that the taxes for 1863 and 1864 were valid, and, as under the revenue law of this State a sale will be upheld if any portion of the taxes is valid for which the land is sold (Rev., Sec. 762, *Eldridge v. Kuehl*, 27 Iowa, 160; *Sully v. Kuehl*, 30 Iowa, 275; *Hurley v. Powell, Levy & Co.*, 31 Iowa, 64), the defendant acquired an interest in the land by his purchase, without regard to the validity of the school tax of 1857, and his title must be upheld unless plaintiffs have acquired a right to equitable relief by their efforts to redeem the property from the sale."

VIII. Plaintiffs' right to redeem depends, not upon any defect in the tax proceedings or illegality of the taxes, but wholly upon their offer to redeem. They must now be held to pay, pursuant to that offer, all the taxes for which the property was sold without inquiry as to the strict regularity of the school tax of 1857. The right to redeem is not based, and cannot be, upon the illegality of that tax, should it be held illegal, but upon their offer to pay it with the other taxes. Their right to redeem acquired by this offer was the right to discharge the lands from all the taxes for which it was sold, including this school tax. This right is no broader to-day than when it accrued. They have now the precise right they had when they offered to redeem, and, as we have seen, that was to pay the amount of the tax sale with penalties, costs and interest.

They may redeem now upon paying the amount that would have been required when they made the offer. This offer was made in October, 1867; the precise day is not shown in the evidence; it will be presumed to have been on the 15th; the amount and date of the tax sale appear in the record.

A decree will be entered in this court setting aside defendant's tax deed, and a judgment will be rendered against plaintiffs for the amount required to redeem the lands, which will be the amount of the tax sale with costs, penalty and interest, provided by the statute to be paid upon redemption from tax

*7. ———: redemption.*

sales, estimated to October 15th, 1867, with interest upon such sum so found from that day at six per centum per annum. In case counsel for the parties cannot agree upon this sum, the clerk of this court, from the record, will ascertain the true amount plaintiffs are required to pay. The judgment will be declared a lien upon the lands in controversy from the date of the tax sale.

IX. No tender was made to defendant at any time of the amount to which he is entitled upon redemption of the land, nor was any amount brought into court for his use. He should not, therefore, be required to pay the costs of the action; they must be assessed against plaintiffs. The costs of this court as well as of the court below must be taxed to the same parties. *Curl v. Watson*, 25 Iowa, 35.

8. ——: ——: costs.

With these modifications the judgment of the court below is affirmed. A decree in accord with this opinion will be entered in this court.

MODIFIED AND AFFIRMED.

DAY, J., *dissenting.*—I have so decided a conviction of the correctness of the majority opinion filed upon the second hearing of this case that I am constrained to withhold my assent from so much of the foregoing opinion as pertains to the question of redemption.

The sale under which defendant claims occurred in October, 1865, for the delinquent taxes of the years 1863 and 1864.

The redemption was sought to be effected by D. N. Smith, president of the Corning Town Company, and agent of George Loomis, who owned the most of the stock of the company. In order that my view of the question may be unmistakably presented, I set forth the whole of Smith's testimony upon the subject of redemption, which is as follows: "In October, 1867, I applied to the treasurer and clerk of the District Court of Adams county to pay all taxes, due or delinquent, upon any and all real property in said county belonging to Loomis and The Town Company, including the land in suit, and redeem all said property that might have been sold for taxes; gave a written list of the land and charged them to examine books carefully

and pay all taxes due on said property, and if any had been sold to redeem it. I left with the county officers a sum of money, more than was required; the remainder was returned to me; was going west; on my return I called for receipts and certificates; stated to them I had not time to examine papers and must depend on them; they assured me that all taxes on said property were now paid, and all lands redeemed. I supposed all lands free from tax and tax sales. Relying upon officers I did not examine the papers they gave me until after I was informed defendant had obtained a tax deed."

The treasurer's deed was not executed until the 6th day of October, 1868. The land in controversy was sold for the taxes of 1865 to Jones and Barnett, and they paid the taxes for 1866. George Loomis paid the taxes for 1867, and the defendant paid them for 1868. On the 12th of October, 1868, the defendant procured an assignment from Jones and Barnett of their certificate of purchase. From the year 1863 to 1868, both inclusive, the owners of this land paid the taxes for 1867, only. It is not claimed that they or their agent supposed or believed that the taxes for 1863 and 1864 had been paid otherwise than through the redemption in October, 1867. If the agent had examined the tax receipts and certificates of redemption he surely would have discovered that he had neither receipt nor certificate of redemption for the years 1863 and 1864. But the evidence shows that, relying upon the officers, he did not examine any of the papers given him, until after he was informed defendant had obtained a deed. This deed was not obtained until nearly a year after the receipts and certificates had been delivered to the agent. If the agent retained them in his possession during this time, he was negligent in not examining them; and, if he delivered them over to the plaintiffs, they were negligent in not examining them. In either case the owners of the land have no right to insist that the consequences of the carelessness or omission of the treasurer and clerk, if they omitted a duty, or were careless in its discharge, shall be visited upon the defendant, the purchaser at the tax sale, who was in no way connected with their act. Their own negligence, or the negligence of their agent, contributed to the result, and

every principle of equity requires that whatever loss follows should be borne by the negligent parties, and not by him to whom no negligence can be attributed. Appellees rely upon the case of *Noble v. Bullis*, 23 Iowa, 559. In my opinion that case falls under a principle clearly distinguishable from the one involved in the case at bar. In that case the owner of the land sought to redeem from a tax sale of a particular year. The land had been sold to two parties for the taxes of the same year. By mistake the clerk issued a certificate of redemption from the second sale, which was invalid, instead of from the first, which was valid. The owner of the land knew that his taxes were unpaid for a particular year, and that for the delinquency his lands had been sold. He redeemed from a sale for the delinquency of that year. He did not know, and had no reason to suppose, that his lands had been twice sold for the same delinquency. He had a right to suppose that, as regards the sales, the business in the treasurer's office had been conducted in a regular and lawful manner. He was not called upon to look for an unlawful thing, a sale to two persons for the taxes for the same year, nor would an examination of the certificate of redemption have furnished any information upon the subject. Hence it was very rightly held in that case that no neglect of duty or failure to exercise ordinary care could be imputed to the plaintiff, and that the circumstances entitled him to equitable relief. In these cases the plaintiffs have been negligent themselves, or through their agent. The cases fall clearly and fully within the principles of *Bolinger v. Henderson*, 23 Iowa, 165.

The foregoing opinion holds that *Bolinger v. Henderson*, and *Noble v. Bullis*, are irreconcilably in conflict, and expressly overrules the former. I am satisfied, upon careful analysis and comparison of these decisions, that there is no real conflict between them, and that both can, and should, be sustained.

The exercise of reasonable care upon the part of the owner of land, would ordinarily enable him to know whether or not tax receipts or certificates of redemption in his possession cover certain years. And, having the means of information, by the exercise of ordinary care, if he chooses to remain igno-

rant, and to intrust the whole matter to the clerk and treasurer, and to rely upon their statements, he thus makes them his agents, and it is more reasonable that the consequences of mistake should be borne by him, than that they should fall upon one having no connection with the transaction.

I am fully and abidingly convinced that the judgment of the court below should be reversed.