R. L. HENRY AND B. H. HALL, APPELLANTS, VS. FLORIDA LAND & MORTGAGE CO., APPELLEE.

1. The place for the redemption of lands sold for taxes, under the act of 1883 (Chapter 3413) was in the office of the Clerk of the Circuit Court for the county in which the lands were situated, but the recognized rule is that provisions for the redemption of lands sold for taxes should be liberally construed, and a redemption can take place out of the clerk's office, as well as in it, if the holder of the tax sale certificate consents to it.

2. The facts of this case show that the holder of the tax sale certificates mentioned in the opinion accepted the money due and consented to a redemption of the lands out of the office of the Clerk of the Circuit Court before the expiration of the time for redemption, and there was consequently a redemption of the lands from the tax sales.

Appeal    from    the    Circuit    Court    for    Lafayette county.

The facts in the case are stated in the opinion.

*A. Paterson* and *H. J. McCall,* for Appellants.

*H. H. Buckman,* for Appellee.

MABRY, C. J.:

The Florida Land & Mortgage Company filed a bill against appellants to cancel a tax deed issued by Hall, Clerk of the Circuit Court, to Henry for certain described lands situated in Lafayette county. The decree was in favor of the complainant and the defendants appealed. The decree was correct and should be affirmed. The lands in question were sold to the State in November, 1887, for the non-payment of taxes assessed for the year 1886, and at the time of assessment and sale the Florida Land & Mortgage Company was the owner in fee. Before the expiration of the time for redemption, Henry purchased the tax sale certificates from the State and had them transferred to R. L. Henry & Co. In June, 1888, within one year from the date of the tax sale, the Florida Land & Mortgage Company, by J. M. Schumaker, its agent, applied through the Comptroller of the State to redeem the lands, and deposited with him sufficient money for that purpose. The Comptroller wrote to Henry that the Florida Land & Mortgage Company had deposited money to redeem the lands, and requested a return of the certificates for that purpose to the Comptroller's office. Henry replied enclosing the certificates, and saying: "I am in receipt of yours of the 30th of June, asking that I return to you the tax receipts of Lafayette county, Florida, as the Florida Land & Mortgage Company has deposited money in your hands to re-

deem same. I herewith hand you certificate No. 1 for ———————————— dollars, with interest since December 22d, 1887." Other certificates are mentioned, and the letter concludes: "On receipt of these certificates please mail me your draft on New York or Chicago for ———————————— dollars, with interest on certificates from December 28th, 1887, to date of redemption." The money deposited with the Comptroller for the redemption of the lands was transmitted to Henry and he acknowledged its receipt as follows: "I am in receipt of your esteemed favor of the 24th inst. enclosing me check for $197.22, amount of money refunded on Lafeyette county lands, redeemed by Jas. M. Schumaker as creditor of the L. & M. Co. Has he a legal right to redeem this land as a creditor of that Co.? We suppose it must be so; otherwise you would not allow him to redeem. With thanks for check, I remain yours very truly, R. L. Henry." The following endorsement was made on each certificate in the Comptroller's office, viz: "Transferred to James M. Schumaker, agent for owner. R. L. Henry & Co., by W. M. McIntosh, Jr., as authorized by letter to Comptroller dated July 30th, 1889," and the certificates were delivered to Schumaker. McIntosh was a clerk in the Comptroller's office. Schumaker was president of a bank in Jacksonville, Florida, and his bank advanced money to pay taxes for the Florida Land & Mortgage Company, and to redeem its lands from tax sales, including the sales in question and others. Schumaker was constituted agent of the Land & Mortgage Co. to pay its taxes and redeem its lands from tax sales, and his acts in redeeming the lands in question were as such agent and for the benefit of the company. Early in the year 1890 the Florida Land & Mortgage Co. paid

to Schumaker's bank all that had been advanced by it in redeeming the lands involved, and when the tax sale certificates came to be surrendered to the land company, on the settlement, it was supposed that the transfers to Schumaker had not been properly made. After conferring with the Comptroller about obtaining further transfers, the bank sent the certificates to Henry, who resided in Chicago, Illinois, saying: "We have this day forwarded to you by express tax sale certificates of Lafayette county, numbered 1, 2, 3, 9, 10 and 17, covering property of the Florida Land & Mortgage Company, and transferred to you by the Comptroller of the State of Florida, and by him informally transferred to James M. Schumaker. Upon examining these transfers, our attorney advises us that the transfers are not in proper form, and upon conference with the Comptroller and Mr. McIntosh, they advise us to forward the same to you, and that you would make the proper transfers thereon, and return the same immediately. What we wish you to do is to simply run a pen through the words, on the back of each certificate, 'transferred to James M. Schumaker, agent for owner, R. L. Henry & Co., by W. M. McIntosh, Jr., as authorized by letter to Comptroller dated July 30th, 1889,' and simply write in place of it 'transferred to J. M. Schumaker, R. L. Henry & Co.' You will readily see that a transfer by any other person than yourself would be invalid, unless there has been a power of attorney to do so. The letter was not sufficient, and if it had been you will notice that the transfer was made by Mr. McIntosh, who was not the person authorized in the letter." Henry received the certificates, but declined to return them, alleging as a reason for doing so that he had never sold his certifi-

cates to Schumaker, or any one else, nor had he ever authorized the Comptroller to sell them, and that the certificates had been surrendered by him on the understanding that they were to be cancelled on a redemption by the owner of the lands. He also sent to the Comptroller the tax money with interest which he had received some two years previously, but the Comptroller declined to receive it, and it was returned. The land company filed with the Clerk of the Circuit Court for Lafayette county a protest against the issuance of any tax deed on the certificate; but in the absence of the clerk his deputy, contrary to instructions, issued a deed to Henry for the lands and recorded it upon the public records of that county.

No question is raised here on the pleadings, and the bill is sufficient in its allegations as one to remove the tax deed as a cloud from the title to the lands if they had, in fact, been redeemed by the owner from the tax sales and the deed illegally issued. The tax sales were in 1887, for the non-payment of taxes assessed in 1886, and the statutes then in force provided for the redemption of lands sold for taxes in the office of the Clerk of the Circuit Court for the county in which the lands were situated, and there was no provision for such redemption in the Comptroller's office. The general rule is, that provisions for the redemption of lands sold for taxes should be liberally construed (Dubois vs. Hepburn, 10 Peters, 1; Corbett vs. Nutt, 10 Wall. 464; Corning Town Co. vs. Davis, 44 Iowa, 622; Black on Tax Titles, sec. 176); and a redemption can take place out of the Circuit Clerk's office if the holder of the tax sale certificates consents to it. So, if the owner of land sold for taxes apply to the holder of the tax

18

sale certificate to redeem, and the latter accepts the money due for taxes and interest, and surrenders the certificate, it will amount to a redemption of the land from the tax sale. It certainly would be so if the application was made before the expiration of the time for a redemption of the lands in the clerk's office, and even after that time and before a deed is issued, if the holder of the certificate accepts the money due on it and surrenders it, a redemption may take place. Black on Tax Titles, sec. 179; Hunt vs. Seymour, 76 Iowa, 751, 39 N. W. Rep. 909; Leas vs. Garverich, 77 Iowa, 275, 42 N. W. Rep. 194; Rogers vs. Johnson, 70 Penn. St. 224. The statutes in force at the time authorized the redemption to be made by the owner or his agent, and in the present case the evidence clearly shows that Schumaker was acting as agent for the Land & Mortgage Company in applying to redeem the lands, and it is also evident that Henry, recognizing the right of the owner to redeem, was willing to accept the money for that purpose and surrender the tax certificates. The letter from the Comptroller's office informed him that money had been deposited with the Comptroller by the owner to redeem the lands, and the certificates were requested to be returned for that purpose, and this request was complied with and the money accepted. The Comptroller's clerk endorsed on the certificates that they were transferred to Schumaker as agent of the owner, showing that Schumaker was recognized as the owner's agent in the transaction, and as a matter of fact the testimony leaves no room to doubt that such agency did exist and the money was paid for a redemption of the land on the part of the owner. It may be true that Schumaker had the transfer made to him as evidence of the fact that he

had made the payment, as explained by the Comptroller's clerk, but it was done as agent for the owner and enured to its benefit. Henry, no doubt, was induced to believe from letters received from Schumaker asking for a straightout transfer to him individually that he, through the pretense of a redemption on behalf of the owner, was seeking to be substituted as the individual owner of the certificates for personal gain, but such was not the case. Schumaker had received back all the money he had advanced for the land company in redeeming lands for it, and was desirous of turning over to it the certificates correctly endorsed, as was supposed. Long prior to this application for a better transfer, and within the time allowed for a redemption of the lands, the owner, by agent, had, through the Comptroller's office, tendered to Henry, the holder of the certificates the money to redeem the lands and it was accepted, and the certificates surrendered. This was the real transaction and it amounted to a redemption of the lands on behalf of the owner, whether there was any proper transfer of the certificates to him or not. The result is that the tax deed was illegally issued to Henry, and should be cancelled.

The decree of the court below is affirmed.