Nick Burchardt, Appellant, v. William Scofield, Appellee.

**Taxation:** ERRONEOUS SALE: OFFICIAL RECORD OF SAME: RIGHTS OF
1  OWNER. Where a tax payer has paid the taxes demanded of him but the treasurer gave him a receipt covering an incorrect description by omitting a portion of the premises, and after sale but before time for redemption expired he discovered the error and made a notation on the tax record of the fact that the sale was erroneous, as authorized by statute, the owner can rely on the record so made; and the treasurer has no authority to erase the entry and issue a deed to the purchaser without notice to the owner and an opportunity given for him to protect his rights.

**Same:** NEGLIGENCE: EQUITABLE RELIEF. A tax payer is not to be
2  charged with negligence simply because he relies upon information given him by a county treasurer respecting the taxes he is required to pay, and if, having made timely effort to pay the same or to redeem from a sale, he is misled by the conduct or mistake of the officer a court of equity will grant him relief

*Appeal from Washington District Court.*—Hon. W. G. Clements, Judge.

Monday, October 26, 1908.

Rehearing Denied Saturday, February 20, 1909.

ACTION to set aside tax deed and to redeem land from tax sale. Decree for defendant, and plaintiff appeals.—*Reversed.*

*Charles A. Dewey,* for appellant.

*W. M. Keeley,* for appellee.

WEAVER, J.—The record in this case is quite complicated, and not a little difficult to understand, but we gather therefrom the following facts: Prior to September 28, 1901, the plaintiff owned among other tracts in the same section, twenty-three and three-quarter acres of land in section 27, township 74, range 8, in Washington County. Of this land fifteen acres constituted a part of the west half of the southeast quarter of the northeast quarter of said section, while the remainder lay on the other side of the half section line. The land now in controversy is the north five acres of the fifteen-acre tract. On the date above named plaintiff conveyed the twenty-three and three-quarter acres to one Simpson, who held the same until the year 1905, when he reconveyed all of the tract to plaintiff. In 1902 Simpson, who then owned no other land in said section, paid the taxes on the entire twenty-three and one-half acres for the year 1901, and on October 28, 1903, offered to the county treasurer to make payment of the taxes thereon for the year 1902. It appears, however, that none of the land had been assessed in his name, and the five acres in question were assessed to one Van Sant, a former owner, while the rest of the twenty-three and one-half acres was included in the assessment to the plaintiff Burchardt, who was the owner of several other small tracts in the immediate vicinity. The description of Simpson's land being somewhat complicated, he or the treasurer, or both, appear to have become confused over it, with the result that the treasurer received the taxes,

and issued to Simpson a receipt for the taxes of 1902 upon twenty-three and one-half acres of land by an indefinite description, which, as near as can be traced, covers land immediately south and east of the true description. At the tax sale in December of the same year, the tax assessed to Van Sant upon the five-acre tract being unpaid, said tract was struck off to the defendant herein. Later when Simpson reconveyed to plaintiff, he passed over to the grantee the tax receipt above mentioned, and plaintiff, being unable to identify the land by its description as a fractional part of the section, took it believing it evidenced the payment of the taxes upon the entire twenty-three and one-half acres. The evidence, however, tends to show that Simpson had become aware of the tax sale, and visited the treasurer's office, where he exhibited his receipt, and asked to have the matter corrected. He claims to have been informed by the treasurer, who does not deny the statement, that an error had been made, and the money received from defendant for the sale of this tract would be refunded to him, thus clearing the cloud from Simpson's title. After plaintiff had become repossessed of the title he employed the assistance of one Deeds, and went with him to the treasurer's office, where he again exhibited the tax receipt, and with the aid of counsel sought to have the land relieved from the sale. The treasurer, appearing to be convinced that it was a meritorious case, wrote upon the proper book, opposite the record of the tax sale of the five-acre tract, as provided in Code, section 1447, the following entry: "Erroneous. Double assessment. Get refund by order of Board." This entry was made both in the Auditor's record of sales, and in the appropriate books in the treasurer's office. Plaintiff testifies that at the time this entry was made he informed the treasurer he was ready and willing to pay the taxes, if any were required, to clear the land from the claim, but was informed by said officer that no payment was necessary, as the board of

supervisors would refund the money to the defendant. Thereafter, the three-year period of redemption having expired, the defendant presented his certificate of purchase to the treasurer, and demanded a deed. The treasurer thereupon, after some investigation and inquiry, but without notice to plaintiff, erased from his books the entry we have above quoted, and executed and delivered the tax deed under which the defendant claims title.

We have been favored by quite elaborate briefs by counsel for the respective parties, discussing various phases of the law governing tax liens and tax titles, but we think it unnecessary to review all the points made.

1. TAXATION: erroneous sale: official record of same: rights of owner.

We regard it as well established by the record that Simpson, who then held the title, applied in due time and in good faith to the county treasurer to pay the taxes on the land in question. He paid the taxes demanded of him, and the treasurer gave to him a receipt therefore covering an indefinite ambiguous description, which, so far as it is capable of location, does not seem in fact to include this tract. After the sale had been made, but before the time for redemption had expired, the attention of the treasurer being called to the confusion in the record, and to plaintiff's claim that the tax had been paid, he conceded the claim, and, following the direction of the statute above quoted, made an entry upon the record designating this sale as erroneous, and presenting a proper case for a refund by the county to the purchaser, and therefore requiring no redemption by the plaintiff. In our judgment the plaintiff had a right to rely upon this action of the treasurer, and upon the record so made, and the treasurer could not rightfully thereafter erase such record, and issue a deed to the purchaser, without notice or opportunity to plaintiff to redeem or otherwise protect his rights in the premises. The statute referred to provides that when it shall be made to appear to the treasurer, before the execution of a deed for

land sold for taxes, that such taxes had in fact been paid before the sale, he shall make an entry opposite such tract in the sale book that the same "was erroneously sold, and such entry shall be evidence of the fact therein stated, and the purchase money shall be refunded to the purchaser." Such entry, once made, is not to be treated as a mere private memorandum of the officer, subject to be erased or changed by him at the solicitation of any person adversely interested. It is an official record, presumed to have been made upon sufficient showing and due investigation, and is by statute made evidence of the truth and correctness of the fact therein stated. For the purposes of this case it is immaterial whether the finding so made and entered by the treasurer might, upon proper trial, have been found to be a mistaken one. It was not for him to attempt to correct the mistake, if any was made. While the treasurer is, generally speaking, not a judicial officer, he is charged with some *quasi* judicial functions, and his finding and entry in this matter involve a finding from evidence which satisfied his own mind that the case was one of double assessment or taxation, and such finding, entered upon the appropriate books, constitutes a statutory record, which we think must stand until a court of competent jurisdiction shall adjudge it to have been erroneously made. He is not empowered to sit in review of his own acts done under statutory authority or direction.

The case of *People v. Wemple*, 144 N. Y. 478 (39 N. E. 397) is quite in point. There the comptroller, acting in ignorance of certain material facts, and having granted an order permitting a redemption from tax sale, was asked to reconsider his action, but refused, on the ground that he had no power to correct or change the order when once made. On certiorari this position was held to be sound, the court saying: "His action, so far as it was of a judicial character, was bounded and controlled by the strict and limited jurisdiction conferred by

the statute.    That gave him no right to review his own orders and annul or vacate them except in the simple case of a cancellation of a tax sale. . . . But it is said that, since an officer acts judicially in granting the redemption, he has inherent power to vacate his own orders. I do not understand he has any power except such as the statute gives him.    It is the general rule that officers of special and limited jurisdiction can not sit in review of their own orders or vacate or annul them."    Any other rule, in cases like the one before us, would expose the landowner to great prejudice and loss without fault on his part, and without adequate remedy or redress.

The taxpayer is not to be charged with negligence simply because he relies upon information given him by the county treasurer with respect to the taxes he is required to pay; and, if he makes a timely and honest effort to pay such taxes, or to redeem his land from tax sale, and is misled by the conduct or mistake of said officer, a court of equity will grant him relief.    *Corning v. Davis,* 44 Iowa, 622; *Henderson v. Robinson,* 76 Iowa, 603; *Hinlrager v. Mahoney,* 78 Iowa, 537.    The case at bar appears to come fairly within the equitable principles recognized and applied in our precedents.    When the treasurer found that the sale was erroneous, and made entry of such finding upon the sale book, it necessarily had the effect to remove that tract of land from the list of those for which a deed could properly be issued, until at least such finding had been properly set aside or canceled by some competent tribunal.    It follows that the tax deed should have been set aside by the trial court.

2. SAME: negligence: equitable relief.

The record does not fairly disclose whether the defendant has paid any taxes upon the property pending this litigation for which he has an equitable claim to be reimbursed, but if there be any, his rights can be protected by the final decree.

The decree appealed from is reversed, and cause remanded, for a decree in harmony with this opinion.—*Reversed.*