T. J. L<span>YMAN</span> et al., Appellants, v. W. A. W<span>ALKER</span> et al., Appellees.

**TAXATION:** Notice of Expiration of Right of Redemption—Insufficient
1   **Affidavit.** An affidavit by the holder of a tax-sale certificate as to the service of notice of expiration of right of redemption is fatally defective when it simply states that said notice was served, "as shown by the return," and it is made to appear that the day of service named in the return is *incorrect*. (Sec. 1441, Code Supp., 1913.)

**TAXATION:** Redemption—Waiver in re Tender. A tax certificate
2   holder whose refusal to accept a proffered redemption was based solely on the ground that he then held a tax deed to the property may not, after the redemptioner has acted on the assumption that his tender was ample, change ground and base the refusal on the ground that the tendered amount was too small.

**TAXATION:** Redemption—Failure to Apply Redemption Funds. Fail-
3   ure of the county auditor to comply with the direction of a redemptioner to apply redemption funds to sales *under which tax deeds would be first due*, will be corrected in equity.

**TAXATION:** Redemption—False Return of Service. A false return
4   of service of notice of expiration of right of redemption is no return. So held where the return showed service on a day earlier than the notice was served.

**TAXATION:** Sale—Expiration of Right of Redemption—Service on
5   **Sunday.** The statutory requirement that a notice of expiration of right of redemption from tax sale shall be served *"in the manner provided for the service of original notices"* forbids service on Sunday, unless the notice is accompanied by a proper affidavit that service will be impossible unless made on said day. (Sec. 1441, Code Supp., 1913; Sec. 3522, Code, 1897.)

*Appeal from Story District Court.*—R. M. W<span>RIGHT</span>, Judge.

D<span>ECEMBER</span> 15, 1921.

A<span>CTION</span> in equity, wherein plaintiffs asked that they be permitted to redeem from a certain tax sale; that a tax deed issued by the county treasurer to defendant Walker be set aside; that the title to the property be decreed to be in the plaintiffs; that the court direct the county auditor to accept payment of the

sum due defendant, and to issue a certificate of redemption; and for general equitable relief. On April 6, 1920, the court entered its decree for defendants, finding that, prior to the issuance of the tax deed in question, the title to the property was in T. J. Lyman, and that T. J. Lyman, guardian, had no title to said lands. This is substantially conceded now by appellant. The decree further finds that the words in Section 1441, Supplement, 1913, "in the manner provided for the service of original notices," do not apply to the time of service of notice required to be served under that section; that the service of the notice required by this section is not a judicial act, but is a ministerial act, and as such is not void if made on Sunday; that the facts and law are with defendants. Defendant Walker was decreed to be the owner of the property in controversy, under the tax deed issued to him. Judgment for costs was rendered against T. J. Lyman in favor of Walker. Plaintiffs appeal.—*Reversed.*

*George C. White* and *Charles H. Hall,* for appellants.

*Fred E. Hansen,* for appellees.

PRESTON, J.—The action was originally brought by Lyman as guardian of his minor children, and it was alleged that, as such guardian, he was the owner of Lot 9, and the south 36 feet of Lot 8, in a certain subdivision in Nevada, Iowa. During the trial, the court, on motion of defendants, ordered that T. J. Lyman, in his individual capacity, be made a party plaintiff, so that the rights of title as between defendants and Lyman, guardian, and Lyman individually, might be determined. The pleadings on file were ordered to be applicable to Lyman as an individual. The property was sold at treasurer's tax sale, December 6, 1915, for the 1913 tax, amounting to about $21. On February 5, 1919, the county treasurer issued a tax deed to defendant Walker. Subsequently thereto, it was discovered that the treasurer had made a mistake in the recitals in said deed, and a second deed, with correct recitals, was issued to Walker by the treasurer, April 28, 1919. As we understand it, this is the deed upon which defendant relies.

If the first deed was regular and valid, the treasurer would have no authority to execute another deed; otherwise if the first

deed was invalid. When the first deed is invalid, the period of limitations within which a tax deed may be attacked by the owner begins to run from the execution of the second deed. 26 Ruling Case Law 421, 422. On November 2 or 3, 1918, defendants caused to be served upon plaintiff a notice of expiration of time for redemption from the tax sale. Defendants' contention is that the notice was served on Saturday, November 2d, and the unverified return of the deputy sheriff so shows. Plaintiff contends that it was, in fact, served on Sunday, the 3d. It is alleged by plaintiff that the notice was not in compliance with the statutes, and was served on Sunday, and was, therefore, of no force or effect, and not binding upon plaintiff. Section 1441 of the statute provides that:

"After two years and nine months from the date of sale, the holder of the certificate of purchase may cause to be served upon the person in possession of such real estate, and also upon the person in whose name the same is taxed, in the manner provided for the service of original notices, a notice * * * Service shall be complete only after an affidavit has been filed with the treasurer, showing the making of the service, the manner thereof, the time when and place where made, * * * and said record or affidavit shall be presumptive evidence of the completed service of said notice."

Appellant contends that, because the return of the notice shows service on November 2d, when in fact it was not served until November 3d, this does not comply with the statute, because there has never been any proof of service filed, truthfully showing the actual time when the service was made; and that, therefore, the defendant has failed to complete the service as provided by the statute; and that, until such service is complete, the deed could not be legally issued. The further contention is that, if this be true, then the plaintiff's payment of the amount of the tax, interest, and penalty, up to March 1, 1919, was a good payment, and constitutes a full satisfaction of all of plaintiff's obligations to redeem his property.

Plaintiff alleges further that, about January 5, 1919, and before the treasurer's corrected tax deed of April 28, 1919, was executed, he paid to the county auditor $245, with directions that this money be used to redeem plaintiff's property that had

been sold for taxes, and with the direction that plaintiff wanted to redeem such property; that the auditor, contrary to instructions, credited this sum in redeeming other property of plaintiff, wherein the notice of expiration of time was served and filed much later than was the notice of expiration of time for redemption of the property in controversy herein. The auditor denies that plaintiff gave such instruction as to the application and use of said money. He admits the payment of the money, but says it was for the redemption of certain property from tax sale, which properties were designated by plaintiff; but that he did not designate the property in controversy. Plaintiff further alleges that, on March 1, 1919, and before the corrected tax deed, he paid to the auditor $240 for the redemption of the property in controversy, and asked that he be given a certificate of redemption; that the auditor refused to issue plaintiff said certificate, but retained and still holds the $240. The auditor admits that payment was so made, and that he informed plaintiff that it was too late to redeem. Thereupon, the auditor received said money, giving plaintiff a receipt as follows:

"The above amount, $239.99, left by Thomas Lyman as a tender to W. A. Walker, for payment of redemption fees."

The auditor admits that he still holds the money.

The defendant Walker, answering first in general denial, then denies that Lyman as guardian is the owner of the property; admits that he holds 'tax deed and the correction deed; and alleges that he purchased the property at tax sale in good faith, and that, subsequently thereto, and prior to the issuance of the tax deed, he paid taxes on said premises as follows: May 23, 1917, special assessments in the amount of $28.66, and $48.20. He further alleges that, subsequent to the tax deed, he paid taxes as follows: On February 13, 1919, to redeem tax certificate No. 2449, $68.16, and to redeem tax certificate No. 2448, $46.61; and that, on March 31, 1919, he paid taxes on the premises in the form of special and general taxes, $111.42; that all said taxes were paid in good faith, and to perfect his title. By amendment, he alleges that, since the filing of his answer, he has paid the following taxes against said premises: September 27, 1919, regular taxes, $24.83; March 29, 1920, regular taxes, $17.09; March 29, 1920, special taxes, $24.20; March 29, 1920,

special taxes, $40.23; March 29, 1920, special taxes, $4.82; March 29, 1920, special taxes, $12.80; and that said payments were all made in good faith, and in reliance on his title.  He further alleges that, if the notice of redemption returned on November 2d was, in fact, served on November 3d, then said notice so served was consented to by Lyman, who thereby waived any and all defects in service; and that he is estopped by his voluntary acceptance of service, if said service was, in fact, made on Sunday, and cannot now claim said service to be illegal.  The record does not show that plaintiff did voluntarily accept such service.  The deputy sheriff testifies that plaintiff did not do so. The only basis in the record for the claim of appellee just referred to is that the deputy sheriff, who served the notice, admits that it was served on Sunday, the 3d, and that he asked plaintiff if it would be all right to date it back, and let the return show that it was served on Saturday, the 2d.  The officer says that he understood that it would be all right; but the plaintiff denies that he consented to it, and says that he told the sheriff that it was a matter for the officer to determine as to what return he should make.  We think there was no waiver or estoppel as to this, and no voluntary acceptance of service, as contended by appellee.

The plaintiff's evidence is without any substantial dispute in the testimony.  It seems necessary to set out some of his testimony.  As will appear from the testimony, the business by the different ones having to do with this matter was very loosely done.  Plaintiff is a man working around at different jobs, shoveling coal, etc.  It appears that he owned quite a number of separate pieces of property which were sold at tax sale.  The sales were either made at different times, or the time for redemption expired at different times.  It was plaintiff's intention to redeem all of his properties, and he did redeem several pieces,—perhaps all but the one in question.  He intended to redeem that.  The value of the property in controversy does not appear definitely; but it is shown that, after defendant Walker secured his tax deed to it, he told plaintiff he would take $1,800 for it, and deed it back to him, and that he would let him have it for less than he would anyone else.  We assume, then, that the property which sold in the first place for about $21 was worth

in the neighborhood of $2,000. The plaintiff testifies that, on Sunday, November 3d, the deputy sheriff, Mr. Lough, at Lough's livery barn, served a batch of five or six notices of redemption, among which was the one covering the property in controversy. He is positive that it was served on Sunday. He gives the transaction in detail. He testifies that, on Saturday night, he met Lough on the street; that Lough said he had a little business with plaintiff, and asked when he could see plaintiff; that he asked plaintiff to come down to his office in half an hour. Lough said he was busy with other work. Plaintiff went to Lough's office, and stayed from about 9 or 9:30 in the evening until 11 o'clock. Lough did not come. Plaintiff told Lough's brother to tell Lough he couldn't wait any longer, and that he would come around the next morning and see what he wanted. Lough did not tell him what business he had, or what he wanted of plaintiff. Lough inquired about the different properties, who lived in them, etc. No one lived in some of them. Lough started to make a return on the notices, and said, "Why, today is Sunday, isn't it?" Plaintiff said, "Yes." Lough asked plaintiff what the notices were about, and plaintiff told him they were redemption notices, and Lough said, "You are going to pay it up, ain't you?" Witness said, "Sure I am going to pay it up." Lough then said, "Let it go." So he got ready and made out his return, and plaintiff walked out.

Another batch of similar notices was served on plaintiff, November 22, 1918. Witness tells where they were served, and so on. Plaintiff testifies that the return on the back of the notice, November 2d, does not show the real facts. Lough, as a witness, testifies that he met plaintiff on the street Saturday, at the place plaintiff states; that he told plaintiff he had some redemption notices, and that he was busy, and that, if plaintiff could come to the barn that evening, witness would give him the notices. Plaintiff said he would. Witness didn't go back in time, and plaintiff was there according to agreement. Lough's brother told him that plaintiff had been there. Lough did not see plaintiff until the next morning. He came to the office, and that was Sunday morning. Lough gave him the notices. He told plaintiff that he was sorry he couldn't be there the night before. He gave plaintiff the notices, and said he would make

the return show the same as though he had served them on Saturday.

"So that is what I did. So the notices I had to serve on him that day were served on Sunday, and I suppose that is true of Exhibit J [the notice in this suit]."

Witness says he does not specifically remember this particular notice as having been served this day, but plaintiff's evidence shows that it was, and the other circumstances in the case so show; because concededly the other batch of notices was served on November 22d.

Defendant's first tax deed to this property was executed February 5, 1919, which would leave only 74 or 75 days after November 22d. Defendant does not claim that the deed was executed before 90 days had expired for redemption. Between November 3d and February 5th, there are about 90 days, or a little more.

No other witnesses testify on the subject of the date of the service. It is true, there is some evidence in the record, which will be referred to later, that all the notices were served—or the returns so show—on November 30, 1918. Concededly, there is a presumption in favor of the return of the officer. Generally, this is a strong presumption, but it is not conclusive.

It is very clear from the evidence of plaintiff and from that of Lough, the officer who served the notice, that the notice of redemption for the property in controversy was served on Sunday, November 3d, and that the return shows that it was dated back to November 2d. The affidavit of Walker, attached to this notice, does not give the date when it was served, or the time or place. He simply refers to the return on the notice, and states that it was served, as shown by the return. He has no personal knowledge of the service of the notice, and does not testify as to when, in fact, the notice was served. Walker's affidavit, then, does not comply with Section 1441 of the statute, as to the time of the service, and does not truthfully state the time when it was served. The importance of this will appear later in the opinion. Walker's affidavit shows that the notice was served by Lough, under his directions.

Plaintiff further testifies, and the auditor's receipt, Exhibit

1. TAXATION: notice of expiration of right of redemption: insufficient affidavit.

G, shows, that, on March 1, 1919, plaintiff deposited with the auditor $239.99, to redeem the property in controversy. The auditor would not take the money as a redemption. The money is still in the auditor's possession. Plaintiff paid the auditor other sums of money, for which he had tax-redemption receipts. One is dated February 28th; another, March 28th; and another, January 24th; and some at another time. Some of these were where the redemption period expired after the date fixed for redemption as to the property in controversy. Plaintiff testifies that, in paying the money into the auditor's office, he told the auditor that he had brought the money to redeem some of the property, and that he wanted to apply it and redeem on those notices that made them become payable first; wanted to put it onto the first set of notices, so that he would have a little more time to finish the others. He says his intention was that he would pay the taxes on that which was likely to take tax title first. The auditor said, ''We will see.'' Plaintiff says that he and the auditor ran down the list of notices, and came to the description of the property in controversy, and plaintiff told the auditor that that was one of the properties that was in that first batch of notices. The auditor replied:

''It is dated the 30th of November, the same as the rest of them, and I guess Walker must have held them all to return them at one time. Well, the return is completed the 30th of November—the 30th of November, the same as the rest of them.''

He says that the auditor told him that, being the 30th of November, as shown on the return, it wouldn't make any difference where the money was applied; so he just wrote out the batch of receipts which plaintiff produced. Witness says he relied on the auditor's statements as to when the tax was due, at this time,—relied on his statement; that, notwithstanding, the auditor took the money and put it on property other than that in controversy. Witness says that he understood from the conversation with the auditor that he had three months from that time; that plaintiff counted up, and said, ''This is November 30th, and February has but 28 days;'' and that he asked the auditor when they would mature. The auditor told him that he guessed it would be the second of March. Plaintiff further testifies that Exhibit I is for the payment of money that

was given to redeem the balance of the property that he got redeemed at that time that the auditor would let him redeem. That was February 28th, and he wanted to redeem the property in controversy at that time; but he said Walker had got a tax title to it, and the auditor wouldn't take it, but said that plaintiff would have to see Walker. The auditor finally took the money and gave a receipt. The auditor took the money on the next day. Saw Walker the next day. He wouldn't do anything unless plaintiff would pay $1,800 for the property. Then plaintiff left the money with the auditor, who gave a receipt. Plaintiff testifies that, when he saw Walker at this time, March 1st, he told Walker the fix that he, plaintiff, was in, and that he had intended to pay it all the time; and told him about having gone to the auditor with the money to pay on those that were due first, but that the auditor did not properly apply it. Witness says that, when the auditor told him that he had until March 2d, he thought he was in ample time when he paid March 1st, and that he went in there before that, February 28th, with the money. Plaintiff continues that he had a conversation with the county treasurer, March 31, 1919; went to pay his taxes for 1919, and the treasurer would not take it on the property in controversy, because Walker had taken a tax deed to it. "He would not take it from me." Plaintiff says that he paid all the rest of the taxes, and then he asked the treasurer what papers he had on file in regard to it,—in regard to these tax sales and redemption notices, etc.; and the treasurer went back to his vault and got out a bundle of papers, went over them, and said, "There is not a thing on file here in regard to any of it." Witness told the treasurer that there had been quite a few notices served, and the treasurer said he didn't have any papers; couldn't find any in connection with it. Witness told the treasurer it looked funny that there was nothing filed, and all the time, the treasurer stated that the notices should be filed with the treasurer, and that there were none there; but he wouldn't take the money. Later, plaintiff and an attorney went to the treasurer's office to look it up, and they found only the one notice, the one in controversy, the return of which showed service on November 2d. That was the only notice filed with the treasurer. Later, on March 31st, when plaintiff went to the

treasurer to pay his taxes, he couldn't find a notice of any kind referring to any of the sales for taxes that had been made of his property,—of the property in controversy, or any of the property.

The auditor's testimony is, in many respects, similar to that of plaintiff. He testifies that Lyman brought money to him, and that he wanted to redeem the properties that became due first. He does not remember that he told plaintiff they were all due at the same time; couldn't state the exact dates or conversations, or what was done on each of these occasions. It was probably the fore part of the year 1919. Some time previous to that, he came in, at one time, and tendered witness a bunch of money, bills, checks, etc., and told witness to redeem as far as it went. Witness started down the line at the first description, and says he "had a dickens of a time making the money fit, on account of the variations, interest, etc." Plaintiff did not specifically call his attention to the property in controversy. He does not know that he said or did anything to deceive plaintiff as to the matter of his redemption. Plaintiff brought money with which to redeem properties that had been sold for taxes. Each time he brought in money and delivered it to witness; delivered it for the purpose of redeeming property sold for taxes, to prevent the execution of a deed.

"I intended to apply it in such a way that it would prevent this property from being conveyed by deed. I understood that the right of redemption expired at different times on different property. Each time that he paid me, I took the precaution to look up the different times that these rights of redemption expired, so as to apply the money on the property that expired on the earliest period. It was my intention, and I understood also it was plaintiff's intention, to pay this money in so as to prevent the right of redemption expiring. * * * He told me which property to apply it on. Lyman was in the office to pay money probably twice,—I could not say how many times. Then he was in once to pay when he left the money for Mr. Walker. I do not know whether, at any time when plaintiff was there, that he had money enough to complete redemption of all the property that was subject to redemption. I can't answer whether plaintiff, at any time prior to the execution of

the deed to Walker, offered sufficient money to redeem the property in controversy. Mr. Walker refused the money tendered March 1st, and I still have the money. I called Walker's attention to the offer. He didn't say much of anything, just kind of laughed about it; and I told him his money was there."

The county treasurer testified as to the execution of the first deed, of February 5th, and the other of April 28th; that the second deed was to correct an error in the recital with reference to the sheriff's return. It appeared in the first deed that the affidavit was filed by another. There was a mistake in the first, and the second deed was issued to correct the mistake. He does not recall plaintiff's coming to his office for the purpose of seeing the return of service of the 90-day period of redemption,—does not mean to say that such a circumstance did not happen; all he means is that he does not remember it.

Defendant Walker testifies to matters, some of which are not in dispute. Says he made the affidavit, and made the sheriff's return on the notice a part of his affidavit; did not direct Lough to serve the notices on Sunday. Testifies to paying taxes subsequent to the purchase at tax sale, and the amounts, down to the trial; that there were other taxes besides the regular taxes on this property,—four special assessments against it, part sidewalk and part paving; that he took them up to protect his original tax certificate. Testifies to receiving the deeds, to the conversation with the auditor about plaintiff's having left money, and to a conversation with plaintiff, who told him that he had been down to redeem, and that the auditor had informed him that Walker had a deed. Plaintiff wanted to know if witness would let him redeem, and he said that he had no right to, because he already had a deed, and that all that could be done would be a conveyance back. Plaintiff asked how much, and witness told him $1,800. He says that the amount tendered the auditor was short of the amount required, but later says he had never figured up the amount; would suggest by making a wild guess. Thinks he did figure it at the time the tender was made. Did not tell plaintiff that was his reason for not accepting it,— that was not his reason for refusing to accept it; he already had a deed entitled to it, and couldn't let plaintiff redeem, as

he suggested. There were several notices served on plaintiff at the same time.

In rebuttal, Lyman says that, when he paid the $239.99, that was the amount that the auditor told him was due. The auditor gave him the figures. That amount was to cover all of the taxes, all of the amount that was due on this property in controversy. He figured it out from the books in the county auditor's office as the amount which was due on this property at that time.

"He said it was, and he made me out this list, and these figures corresponding with the receipts."

This is the substance of the testimony, and, as before stated, there is but little dispute.

1. From the foregoing, it will be observed that, though there is some pretense on the part of Walker that the amount tendered by plaintiff was short, he says he made no objection on that ground. The defendant may not now object on that ground. *Bundy v. Wills,* 88 Neb. 554 (130 N. W. 273); 26 Ruling Case Law 428.

2. TAXATION: redemption: waiver *in re* tender.

It will also be noted from the foregoing that it is not at all clear that the plaintiff did not tender sufficient money, and that there was not sufficient money in the hands of the auditor, and in time to redeem this property, if it had been applied on redemptions first expiring, and as directed by plaintiff. The undisputed evidence shows that there were some mistakes on the part of the county officers, and that they, innocently no doubt, misled and misinformed the plaintiff. This being so, plaintiff is not to be charged with negligence simply because he relied upon the information given him by the county officers, with respect to the taxes he is required to pay. If he makes a timely and honest effort to pay such taxes, or to redeem his land from tax sale, and is misled by the conduct or mistake of the officers, a court of equity will grant him relief. *Burchardt v. Scofield,* 141 Iowa 336, 341, and cases cited. In that case, it was held that the case came fairly within the equitable principles recognized and applied in other cases, and that the tax deed should have been set aside. See, also, 26 Ruling Case Law 428, 429, and *Noble v. Bullis,* 23 Iowa 559, where it was held that an owner was entitled to equitable relief after the period of redemption had expired, for mistake

3. TAXATION: redemption: failure to apply redemption funds.

of the officers in applying redemption to the wrong tax. This case is also cited in 26 Ruling Case Law 429, where it is further said that this may be done under such circumstances, or when in some other way the right of redemption was prevented from being exercised within the statutory period by the dereliction of duty on the part of the officers of the state or of the municipality; and further, that the effect of payment or tender by the owner, of the amount due to the purchaser, is to defeat the estate of the purchaser, and to leave the title and right to possession where they would have been, if the sale for taxes had never taken place. See, also, 26 Ruling Case Law 400, where it was held that payment, tender, or attempted payment, in good faith, is sufficient. Plaintiff's tender of payment and his effort to pay on March 1st were before the execution of the second deed, April 28th, which, as we have shown, was the only valid deed executed to defendant Walker.

2. We have seen that the return of service on the notice of redemption and the affidavit of the certificate holder attached thereto do not correctly or truthfully state the time when the notice was served. It was, in fact, served on Sunday, but dated back. We think there is force in appellant's contention that this may not be done. Section 1441 of the statute provides, in part, that service of such notice shall be complete only after an affidavit has been filed with the treasurer, showing the making of the service, the manner thereof, the time when and place where made, etc. Under the authorities, the statute in such matters must be strictly followed, even in matters which may not seem to be material, or which may be thought to be trivial. The dating back of the notice, showing a different time of service, might be very important. The notice served Sunday, November 3d, if it was legal, and any notice at all, would have given plaintiff 90 days from that date in which to redeem. Suppose, on the last day for redemption, he had appeared with the money to make the redemption, and was confronted with a notice dated back, showing service on November 2d: he would be too late to redeem. The notice must set forth with clearness and accuracy the date when the right of redemption expires. 26 Ruling Case Law 432, and cases. It has been held that a notice of redemption is equally

*4. TAXATION: redemption: false return of service.*

defective, whether it extends or reduces the time for redemption.
*State v. Nord,* 73 Minn. 1 (75 N. W. 760). In *Cornoy v. Wetmore,* 92 Iowa 100, a number of cases are cited and reviewed.
The holdings are that the requirements of the statute are absolute; that courts have no power or authority to dispense with
the positive requirements of the statutes on the ground that they
are unnecessary. In another case, it was said that it appears to
us to be contrary to the spirit of all the decisions of this court,
with reference to the service of the expiration of redemption
notice and proof of such service; that the requirement of the
statute appears to be absolute, and is one of the steps necessary to
be taken, to cut off the right of redemption. The circumstances
in the case referred to are not precisely the same as in the instant
case, but the language used is applicable. See, also, *Barcroft v.
Mann,* 125 Iowa 530, holding that failure of the return of service
of notice to redeem, to state either the time or place of service,
renders the notice insufficient, under Code Section 1441. See,
also, *Neilan v. Unity Inv. Co.,* 147 Iowa 677; *Cain v. Ehrler,*
33 S. D. 536 (146 N. W. 694). We find this doctrine, and numerous cases, cited in 26 Ruling Case Law 394. There is no presumption in favor of the validity of a tax title based upon a sale
by a collector, as an administrative act. One who claims title
to the property of another by virtue of a sale for nonpayment of
taxes is bound to show the existence of every fact necessary
to give jurisdiction and authority to the officer who made the
sale, and a strict compliance by him with all the things required
by the statute in carrying out the sale. That the variation from
the requirements of law was trivial, and did the owner no harm,
is not sufficient reason for disregarding it. See, also, 26 Ruling
Case Law 418.

3. We shall not spend much time on the question as to
whether the service on Sunday was a legal service. Counsel for
appellee rely on Section 3518 of the Code, which provides for the
method of service of original notices; but Section 3522 goes with it, and that provides that
such notice shall not be served on Sunday unless
the plaintiff makes oath thereon that personal
service will not be possible unless then made, etc. Section 1441
provides that the notice of redemption may be served in the

5. TAXATION: sale:
expiration of
right of redemption: service on
Sunday.

manner for the service of original notices. The manner of serving an original notice on Sunday is to make an oath thereon. This was not done. There was no necessity for serving this notice on Sunday. It was possible to serve it a few days before or after. It was not a work of necessity. Appellee cites *State v. Ryan*, 113 Iowa 536, *Nixon v. City of Burlington*, 141 Iowa 316, and *Puckett v. Guenther*, 142 Iowa 35, as holding that ministerial acts may be performed on Sunday. The first of the above named cases was as to a notice of introduction of new evidence. There is no provision of the statute that such may or may not be served on Sunday. The second case was as to a publication of a notice of resolution of necessity, the last publication of which fell on Sunday. The last case was where the spreading of a judgment upon the record by the clerk was held to be a ministerial act. In the *Ryan* case, supra, at page 538, it is said that mere ministerial acts may be performed on Sunday, in the absence of any prohibitive statute. This is quoted in the *Nixon* case, supra. But as to service of an original notice on Sunday, we have a prohibitive statute, which we have before quoted, which provides that it may not be served on Sunday, unless an oath is indorsed thereon. The rule is stated thus in 25 Ruling Case Law 1445:

"A distinction is made between judicial acts and those of a ministerial character, and it seems to be generally held that, in the absence of a statute, ministerial acts performed on Sunday are valid."

Instances are there given of things that may be done on Sunday, as ministerial acts; but the text cites *Shaw v. Williams*, 87 Ind. 158, as holding that the publication of a sheriff's notice of sale in a Sunday newspaper is invalid.

25 Ruling Case Law 1447 states the rule that, in some jurisdictions in this country, the service of process on a Sunday or holiday is expressly forbidden, and service in violation of the prohibition is invalid, as is also a return of process; that, independent of such statutes, there is a diversity of opinion as to the Sunday phase of the subject, and according to some cases, the view is that the issuance or service of process is a ministerial act, and not within the prohibition of the law, while in others, the contrary view is taken, not only as to when the act is done

on Sunday, but on a holiday. Some cases hold that service of summons on Sunday is not a nullity, but an irregularity; and that a judgment based thereon is not void; and that service on a holiday is valid unless prohibited by statute, either expressly or by implication; and that such prohibition is not contained in a statute which simply declares that certain days shall be legal holidays. In *Schwed v. Hartwitz*, 23 Colo. 187 (47 Pac. 295, 58 Am. St. 221), it is held that a publication of a notice of a tax sale is in the nature of the service of process, and if it takes place in a Sunday edition of a newspaper, it is void. As before pointed out, Section 1441 provides that the notice of redemption is to be served in the manner provided for the service of original notices; so that, under the last authority cited, it is at least in the nature of service of process. We are inclined to hold that, because of the statutes before cited, and the requirement that an original notice, to be served on Sunday, must have an oath indorsed thereon, the service of the notice of redemption in this case on Sunday was not a ministerial act, and was invalid. This being so, plaintiff's right of redemption has not been cut off; the deeds executed by the treasurer to the defendant Walker should be set aside; and plaintiff should be allowed to redeem, upon his payment to Walker of all legal and proper taxes on the property in controversy paid by Walker up to the time of entering the decree herein. upon this remand, with interest. The decree will make the amount found due a lien on the property, and if the judgment is not paid by plaintiff within 60 days after rendition of judgment, execution may issue.

The defendant testifies to a number of payments of taxes made by him; but the interest has not been computed, and there have doubtless been payments made since the case was tried in the district court, which are not in the record. Under such circumstances, the district court is authorized and directed to hear evidence and determine the amount due defendant Walker from plaintiff.

For the reasons before stated, the decree of the district court is reversed and remanded for a decree in harmony with this opinion.—*Reversed and remanded*.

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.